Opinion delivered March 13, 1888.

----

## No. 2328.

### SOFORA PILKINTON v. GULF COLORADO & SANTA FE RAILWAY COMPANY.

1. DAMAGES.—When injury is received by one in the employ of another while engaged in the performance of service for his employer, but which is rendered in a manner violative of the rules of the employer, no damage can be recovered from such employer. It will be presumed, in the absence of evidence to the contrary, that in such case the employe knew of the general rules made to govern him in the employment.

2. SAME.—No damage can be recovered from an employer for injuries sustained through the negligence or incompetence of co-employe, unless it, is shown that the employer has failed to exercise proper care in his selection.

3. RES GESTÆ.—When the circumstances in evidence render it probable that a statement offered as part of the res gestæ was the result of premeditation, or deliberate design to effect some particular purpose, it should be excluded.

APPEAL from Austin.    Tried below before the Hon. H. Teichmueller.

*Bell & Shelburne, F. Charles Hume* and *Seth Shepard,* for appellants: The duty of master or his representative, is to inform inexperienced servants of dangers and rules of service. (Mo. Pac. R'y Co. v. Watts, 64 Texas, 568; Howard Oil Co. v. Farmer, 56 Texas, 301; Mo. Pac. R'y Co. v. Callbreath, 1 S. W., Rep., 622, 1886; Woods's Master and Servant, p. 716; Fay v. Minn. & St. Louis R'y, 11 Am. and Eng. R'y Cases, 194, 195; Pittsburgh, etc., R'y v. Adams, 23 Am. and Eng. R'y Cases, 408; Coombes v. New Bedford Cordage Co., 102 Mass., 572; O'Connor v. Adams, 120 Mass., 427; Dowling v. Allen, 74 Mo., 13; 41 Am. Rep., 298; Hill v. Guest, 55 Ind., 45.)

The company's liability was made an issue by the facts, notwithstanding the general rule exempting master from liability for injuries caused a servant by the wrong of his fellow, and without regard to the extent of conductor's authority, or to the nature of the service done by deceased whether within or beyond the scope of his employment, or permitted or prohibited by the rules of the company. (Chicago, etc., Railroad Company v. Ross, 112 United States, 377, 390, 391, 394, 395; citing and discussing many cases, and approving, among others, Railway Company v. Keary, 3 Ohio State, 201; Little Miami Railway Company v. Stevens, 20 Ohio, 415; L. & N. R. Co. v. Collins, 2 Duvall, Ky., 114, and the text of 1 Redf. on Railways, 554; R'y Co. v. Fort, 17 Wall, 557–559, approved in Hough v. R'y Co., 100 U. S., 217, 218; Cooley on Torts, 555, 556; Woods on Master and Servant, sections 439, 440, 442, 444, 446, 448, 450, pp. 899, 900 of sec. 452, 453 and cases there cited and discussed; Darrigan v. N. Y. & N. E. R. Co., 52 Conn., 285; 24 Am. Law Reg., N. S., 452, followed by an exhaustive note; Lake Shore and M. S. R'y Co. v. Spangler, S. C., Ohio, Oct. 10, 1886, 22 The Reporter (Dec. 8, 1886, No. 23), 734–736; Railroad Co. v.

Lavelly, 36 Ohio State, 221; Chicago & N. W. R'y Co. v. Bayfield, 37 Mich., (Cooley, C. J.), 205, 209, 213; Jones v. Lake Shore, etc., R. Co., S. C., Mich., 1883, 8 Am. and Eng. R. cases, 221-225; Chicago, etc., R'y Co. v. May, 108 Ill., 288 (1884); 15 Am. and Eng. R'y cases, 323, 324; Railroad Co. v. Bowler, 9 Heisk., 866; Nashville, etc., R'y Co. v. Wheless, 10 Tenn., 74; 15 Am. and Eng. R'y Cases, 315-319; Miller v. Mo. Pac. R'y Co., 12 Fed. Rep., 600; Addenda to 6 Am. and Eng. R'y Cases, 614, 615; L. & N. R. Co. v. Moore, S. C., Ky., 1886, 24 Am. and Eng. R'y cases, 446, 447; Greenleaf v. Ill. C. R'y Co., 29 Iowa, 47; Pittsburgh, etc., R'y Co. v. Kirk, 102 Ind., 399, cited in note 24 Am. and Eng. R'y Cases, 457; Heinrich v. Pullman Palace Car Co., approving Cooley on Torts, 539, 540, U. S. D. C. Oregon, 18 Am. and Eng. R'y Cases, 381, 382; Johnson v. Central Vt. R'y Co., 56 Vt., 707; 19 Am. and Eng. R'y cases, 169, 170.

*Chesley & Haggerty,* for appellee.

ACKER, JUDGE. This suit was brought by appellants, Sofora Pilkinton, widow of Frank Pilkinton, and Ella, Ellis, Eva and John, minor children of Frank Pilkinton, to recover of appellee fifteen thousand dollars damages resulting to them from the death of Frank Pilkinton, which it was alleged was caused by the negligence of appellee.

The deceased had been employed by appellee as a brakeman but a few days when he received the injuries which caused his death, while assisting in making what is called a "running or flying switch," which feat is described as being performed in the following manner: The train is put under such headway at sufficient distance from the switch that the train may be uncoupled, and, by running faster, pass the switch far enough ahead of the rear portion of the train to allow the switch to be thrown and the rear portion of the train to enter it. The conductor in charge of the train uncoupled the cars between a flat car at the rear of the front portion of the train, and a box car at the front of the rear portion of the train. By direction of the conductor the deceased took position on the flat car at the rear end of the front portion of the train, for the purpose of holding it with the brake after it passed the switch, and the conductor uncoupled the cars and climbed upon the top of the box car at the front end of the rear portion of the train to "ride" that portion of the train into the switch. When the

two portions of the train had been separated by the space of about sixty feet, the deceased fell from the flat car and was run over by the portion of the train that the conductor was riding into the switch.

The conductor, who is the only witness who testifies to the manner in which the deceased received his injuries, says that after the cars were uncoupled he signaled the engineer to move off with the front portion of the train, and then climbed upon the top of the box car, when he looked towards deceased and saw him "start or stumble" towards the brake and fall from the car on the track.

Flying switches were expressly forbidden by rule adopted by appellee for the government of its employes, but it was the custom of employes to disregard the rule and make flying switches to save time. The company furnished employes with necessary appliances for switching cars in a manner much less dangerous than the flying switch. Employes disobeying the rule prohibiting the flying switch were punished by discharge, whenever such act of disobedience came to the attention of appellee's general officers. The deceased had had but little experience as a brakeman, and it does not appear whether or not he knew that the running switch was more dangerous than switching by other modes. It was appellee's custom to furnish its employes with the rules prescribed for their government, but it does not appear whether or not the deceased was informed of the rule prohibiting the flying switch.

Under this state of facts the court instructed the jury to return a verdict for appellee, in which it is contended that the court erred, because "the pleadings and evidence showed a case requiring of the court a submission of the facts to the jury by appropriate instructions; and the jury would have been warranted, upon such submission to them, in finding a verdict for the plaintiff."

In accepting employment as brakeman, the deceased assumed that he possessed the necessary qualifications, and was competent to perform all service incident to such employment. He took the position subject to all risks pertaining to that service, and if he knew that the flying switch was prohibited by a rule of the company, established for the safety of employes, and he received his injuries while acting in willful disobedience to such rule, and such act of disobedience was the proximate cause of his injuries, there could be no recovery in this

action. (Railway v. Ryon, ante, 56.) The existence of the rule is alleged in the petition, but it is not alleged that deceased did not know of the rule. In the absence of proof to the contrary, it will be presumed that appellee notified deceased of the rules by which he was to be governed as its employe. (Wood's Master and Servant, sec. 419.)

The evidence tends strongly to show that the injuries which caused the death were the result of an accident incident to the service of a brakeman. It appears that he was not thrown from the car by the sudden start given the front portion of the train to draw it rapidlyaway from the rear portion, for at the time he fell from the car the front portion of the train had gained a distance of about sixty feet from the rear portion. This must have been some moments after the immediate effect of the jerk produced by the sudden start. The only witness who seems to have seen him at the time he fell says that he "started or stumbled toward the brake and fell from the car." It seems probable that the fall was the result of an accident, rather than the sudden starting forward of the train. But if it was admitted that the injuries were caused by the sudden start of the train, no recovery could be had in this action, for it is evident that the injuries would not have occurred but for the misconduct or negligence of Pilkinton's fellow servants. (Dallas v. Railroad, 61 Texas, 201; Robinson v. Railroad, 46 Texas, 540; Railroad v. Faber, 63 Texas, 344; Railroad v. Scott, 64 Texas, 549.)

To authorize a recovery for injuries sustained by an employe through the negligence or incompetency of a fellow servant, it must be alleged and proved not only that the fellow servant was negligent or incompetent, but that the employer had not exercised reasonable and proper care in the selection of the servant by whose negligence or incompetency the injuries were caused. (Wood's Master and Servant, sec. 419.)

On the trial appellants proposed to prove by the witness Sofora Pilkinton, as part of the res gestæ, the substance of a statement made to her by her husband Frank Pilkinton, three hours after he received the injuries, as to how the injuries occurred. On objection, this testimony was excluded, and appellants contend that this was error.

As to what is res gestæ depends much upon the circumstances of each particular case. The doctrine is based on the presumption that declarations made at the time of the act, or

transaction, or the event to which they relate, evoked by it, without premeditation, are part of the act, or transaction, or event. To be a part of the res gestæ, the declarations are not required to be precisely concurrent in point of time with the principal transaction, if they spring out of it, tend to explain it, are voluntary and spontaneous, and are made at a time so near as to preclude the idea of deliberate design. (McGowan v. McGowan, 52 Texas, 657.)

The rule is very latitudinous, and its application must be left largely to the judicial discretion of the trial court. Where the circumstances of the case render it probable that a statement offered as res gestæ is the result of premeditation or deliberate design to effect a certain purpose, it should not be received. It does not, however, appear, from the bill of exceptions what statement the deceased made to his wife as to the manner in which he received his injuries, or that his statement differed in any particular from the testimony of other witnesses. Without this we can not determine that the ruling here complained of was prejudicial to the rights of appellants.

We think there is no error in the judgment of the court below, and that it should be affirmed.

*Affirmed.*