## HUTTON v. GRAHAM.

(Court of Civil Appeals of Texas. San Antonio. Nov. 15, 1911.)

1. REFERENCE (§ 99*)—REPORT OF AUDITOR—REPORT AS EVIDENCE.

An auditor's report, in so far as it is excepted to, is prima facie evidence of what it exhibits, and, where not excepted to, it is conclusive.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 148–156; Dec. Dig. § 99.*]

2. REFERENCE (§ 100*)—AUDITOR'S REPORTS—INTRODUCTION OF OTHER EVIDENCE—OBJECTION.

Where plaintiff, in an action for the recovery of money alleged to have been embezzled by a deputy collector, filed no exceptions to an auditor's report, but introduced other testimony, the effect of which was to negative the report, he was in no position to complain, if the court considered all the testimony.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 157–168; Dec. Dig. § 100.*]

3. TAXATION (§ 567*)—EVIDENCE—CONVERSION BY DEPUTY COLLECTOR.

Evidence, in an action by a tax collector against the representative of a deceased deputy, held to sustain a judgment in favor of the defendant as to a particular collection.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 567.*]

4. TAXATION (§ 567*)—EVIDENCE—CONVERSION BY DEPUTY COLLECTOR.

Evidence, in an action by a tax collector for the recovery of money alleged to have been misappropriated by a deputy, held to warrant the finding that a certain amount sought to be recovered was received during the deputy's absence.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 567.*]

5. TAXATION (§ 567*)—CONVERSION BY DEPUTY COLLECTOR—EVIDENCE.

Evidence, in an action by a tax collector to recover amounts alleged to have been collected by the deputy and to have been converted or appropriated by him, held to sustain a judgment for defendant.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 567.*]

Appeal from District Court, Dallam County; D. B. Hill, Judge.

Action by R. P. Hutton against Mattie V. Graham, as executrix of the estate of G. W. Graham, deceased. Judgment for defendant, and plaintiff appeals. Affirmed.

Tatum & Tatum, for appellant. R. E. Stalcup, Harrington & Moore, and Ed. C. Hyde, for appellee.

JAMES, C. J. Appellant, formerly tax collector of Dallam county for the years beginning in 1905 and ending with 1907, sued G. W. Graham, one of his deputies, alleging, in substance: That a check of Fowler & Todd for $1,021.10 was given for taxes on or about November 13, 1906, which check was indorsed in plaintiff's name by Graham and deposited to the credit of plaintiff, but that he (Graham) never paid or turned over to plaintiff, but appropriated, the same. That said Graham also collected $562.50 from J. F. Cain, on or about July 24, 1907, which he never reported or paid over or refunded to plaintiff, but appropriated. And that he collected taxes from divers persons, the names of whom plaintiff is unable to give, to the amount of $200, which he appropriated. The above is what is claimed in plaintiff's amended petition, which is directed against appellee, the executrix of the will of Graham, who died after the action was brought. The court appointed an auditing committee of two, who filed their report. The cause was heard by the court and judgment rendered for the defendant.

Appellant's first assignment is that the court erred in giving judgment for defendant "because the report of the auditors shows that Graham had collected taxes to at least the sum of $1,021.10, that he had never reported same to plaintiff, nor turned it over to plaintiff, nor paid it out for the plaintiff, and, as no testimony was offered by defendant, the auditor's report showing a shortage of said amount was at least prima facie evidence that he had collected and appropriated said sum."

The second assignment is that the auditor's report shows that there had been collected $5,147.44 more than had been accounted for by Graham, and, as said report was not disputed by any testimony offered by the defendant, it was prima facie evidence that

Graham collected said amount and made no disposition of the same and never reported the same nor turned it over to plaintiff.

The third assignment is that the undisputed evidence showed that Graham made all the reports showing the amounts collected and the amounts paid out during the term from June 5, 1905, to December 31, 1907, with the exception of the month of July, 1907; that he drew all checks on said funds in the name of plaintiff; that he issued a receipt to Fowler & Todd on November 13, 1906, for $1,021.10; that he indorsed same in plaintiff's name and deposited it with the First National Bank of Dalhart; that said receipt was numbered 37; that he made up a report of taxes collected showing that receipt No. 37 was issued to a Mabel Mack for the sum of $8.91 showing to have been on the same date as the first No. 37 to Fowler & Todd; that he never made any report of the Fowler & Todd receipt; that the auditor's report shows that the said Graham never reported nor made any disposition of the amount of $1,021.10 by him collected while acting as assistant tax collector for plaintiff up to the date he quit working for plaintiff, and shows there was a shortage of that amount between the moneys he collected and the amount reported, and showing that he collected said $1,021.10, which he failed to turn over to plaintiff.

[1] It is now settled that an auditor's report, in so far as it is excepted to, is prima facie evidence of what it exhibits, and, where not excepted to, it is conclusive. Exceptions were not filed to the report in this case. Plaintiff was not willing to risk his case on the report alone, but proceeded to introduce other testimony, viz., testimony of one of the auditors explanatory of the report and testimony of plaintiff and other persons in reference to the affairs of the office. Defendant introduced no testimony, further than to cross-examine plaintiff's witnesses.

[2] We take it that, even when no exceptions are filed to an auditor's report and plaintiff introduces other testimony, the effect of which is to negative the report, and submits the case to the court on all the testimony, he is in no position to complain if the court considers all the testimony and gives effect to what it develops.

However, we are of opinion that this auditor's report does not of itself make out a case against Graham for the appropriation of the $1,021.10. The report shows that the check of Fowler & Todd was, the day after it was received by Graham, deposited by him in the First National Bank of Dalhart to the credit of "R. P. Hutton, Collector." It shows, also, that between June 1, 1905, and December 31, 1907, the receipts of the office totaled $80,239.45, and the disbursements found accounted for by the auditors amounted to $5,147.44 short of that sum. But the report shows that in arriving at the above deficiency "the following necessary data was not available: Office cashbook, June, 1905—December 31, 1907; paid checks or vouchers, various banks; the regular collector's receipt book for the City & Independent School District for a portion of the period above noted." It showed deposits had been made during said period in three banks: With First National Bank $55,458.39, Midway Bank & Trust Company $9,829.02, and Dalhart National Bank $9,095.71, and that the "vouchers returned" by the First National Bank show $55,458.39, thus closing that account and "vouchers returned" by the Dalhart National Bank showed $9,095.71 and the Midway Bank & Trust Company $6,887.64.

As above stated, the report shows that the auditors did not have the checks or vouchers returned, and therefore how, or by whom, the bank accounts had been drawn against, they of course could not state in their report. It showed that they did not have the office cashbook from June 5, 1905, to December 31, 1907—that all the said data was necessary in arriving at the result. Under the head or "Remarks," the report showed "Omission receipt No. 37, not reported prior to Dec. 31, 1907, as law directs, issued Fowler & Todd—$1,020.10." It shows also as follows:

| 1906. Nov. Collections | | Disposition | |
|---|---|---|---|
| Total Receipts $2,180.30 | $ | 390.74 | State Treasurer |
| | | 184.52 | School Coupon No. 1. |
| | | .90 | Exchange |
| To balance $1,020.10. | | 527.06 | Paid Co. Treasurer #56. |
| See receipt No. 37, | | | |
| not reported. | | 56.96 | Commission. |
| | | 1,020.10 | Balance (Red) |
| $2,180.30 | | $2,180.30 | |

The above is substantially what the report shows concerning the item of $1,021.10 for which plaintiff seeks to charge defendant. It did not suffice to show that Graham had appropriated that item. It showed that the Fowler & Todd check for $1,021.10 was deposited in the First National Bank by Graham the day after it was received at the office. It showed that the account at that bank had been closed, or was balanced, on December 31, 1907. It did not show that the particular deposit had been withdrawn by Graham. It did not show and did not profess to show how, by whom, or for what purpose the drafts or checks on that bank account, which exhausted it, had been made. It did not show that Graham had exclusive power to draw checks or to make the cash disbursements. It shows upon its face that the difference they reported between the receipts and disbursements was arrived at without reference to sundry necessary data. This being the condition of the report as to that item, it did not make a prima facie case of embezzlement of that collection (or for that matter of any collection) by Graham, although the report disclosed that in his

monthly report for November that particular collection was not included.

It was therefore necessary, in order to make a case, to adduce further proof, and it is evident plaintiff realized this. It was shown, outside of the report, that the receipt issued to Fowler & Todd for $1,021.10 was issued by Graham and bore the number 37 and was dated November 15, 1906. Plaintiff showed from the stub in the original receipt book, which was also in Graham's handwriting, that receipt No. 37 was issued to Mabel Mack for the sum of $8.91 on November 17, 1906. The monthly report for November, 1906, also in Graham's handwriting, of state and county taxes, did not mention this item of $1,021.10, as already stated. It was shown that all the monthly reports returned to the commissioners' court were made out by Graham, except that for the month of July, 1907. Plaintiff testified he had made good this omission by payment to the county and state.

The facts just shown are all that appear to point to a breach of duty on the part of Graham with reference to the $1,021.10. As a matter of fact, he duly deposited that very check to the plaintiff's account with the First National Bank, and the fact alone that he omitted to include that item in his monthly report to the commissioners would not even tend to show that he, after depositing it, withdrew or otherwise appropriated this collection. In this situation, it was necessary for it to appear that he subsequently appropriated the amount of that item, notwithstanding he had deposited it to plaintiff's credit in order to charge him with it.

The difference indicated by the auditor's report between receipts and disbursements of the office from June 1, 1905, and December 31, 1907, ought not to be allowed any great weight in view of their explanation showing that a reliable result in this respect was not reached because they admittedly did not have before them certain necessary data, and the trial court would have been warranted in so dealing with it.

It was shown by the evidence adduced that both Hutton and Graham turned moneys over to the treasurer, which had come into the office in the form of cash, which shows that Graham did not have the exclusive handling of the funds. Plaintiff testified that while he was in office three persons collected taxes and issued receipts. Of course, they handled cash. Nowhere was it testified to that Graham had exclusive charge of the affairs of the office or of the funds. It appeared further that Hutton, as well as Graham, drew checks against the bank deposits in the course of the business. In this connection a question is made in reference to books, checks, and "vouchers returned" which would, if produced, have shown how and by whom the funds deposited in bank were drawn out, and might have shown that Graham in some manner withdrew and appropriated the $1,021.10.

It appears from the deposition of Graham that Hutton called upon Graham and claimed that he had been robbed by the banks and wanted Graham to straighten it out; that Graham told him to bring him every book in the office connected with it; that he wanted the tax register and Hutton's check books and his used checks drawn by Hutton or himself and his deposit slips; that he gave plaintiff a statement showing that he had a balance in the banks of $3,400, and some odd dollars, and Hutton said there was something wrong, that there was a mistake because the banks had robbed him. He then asked Graham to make him another statement, and Graham told him he would, and told him to bring back just what he had brought the other time. He then brought all of his papers and books, and Graham took them and when he got through showed him he had a balance in the bank amounting to $2,400, and he said this was not like the other statement. Graham told him, "No," and that it was because this time he brought checks that he did not bring the other time, checks amounting to a sum sufficient to cut this down $1,000, leaving a balance to his credit of $2,400, instead of $3,400.

The point made by appellant is that it appears that Hutton turned over to Graham said books, checks, and deposit slips, and that the same are in defendant's possession, and the failure to produce same before the court or the auditors, and not accounting for the same, is a strong circumstance that the same were detrimental to defendant, and "as plaintiff made out a prima facie case, and the same not being contradicted by the defendant, plaintiff was entitled to judgment."

The testimony relied on as showing that the said papers remained in Graham's possession is the above statement of Graham. The statement does not show that they were left by Hutton with Graham after the latter was through with them. On the contrary, it would rather appear that Hutton resumed possession of them, as he had done so on the former occasion. The court had a perfect right to so consider it, particularly when Hutton did not testify that they remained with Graham. It was a fair presumption, from all the circumstances, that the papers were in plaintiff's possession.

[3] We conclude that the testimony did not show that the $1,021.10 represented by the check of Fowler & Todd was misappropriated; that it was clearly insufficient to establish that Graham appropriated it; and that the judgment as to that collection in favor of defendant was warranted by the condition of the evidence, instead of being, as appellant says, against the undisputed facts.

[4] The fourth assignment is that the court erred because the undisputed facts show

that J. F. Cain paid to Graham $562.50 for occupation taxes; the latter iss<sub> ing a receipt therefor and appropriating the money. This assignment is based on Reese Tatum's testimony to the effect that such a receipt was exhibited to him by Cain, that he turned it over to Hutton, and that it was in the handwriting of Graham. He did not remember its date. Also on Hutton's testimony, who stated that Graham gave Cain the receipt, that it was for currency, and that it was in Graham's handwriting. He testified that he had made diligent search for it and could not find it, but that it was for occupation taxes from July 24, 1907, to 1908. As to its date, his testimony is extremely conflicting. In one place he stated that "it was dated about July 24, 1907. That was the date the license was due; I could not say whether it was that date or the day later. * * * The receipt that he had was the 24th of July. * * * He (referring to Graham) left evidently on the 4th of July and he issued that receipt on the 3d." Hutton testified, and it was undisputed, that Graham left for Virginia to spend a vacation on July 4th, and remained away until August 23d. H. C. Floyd, one of the auditors, testified that in making up their report they found on the occupation tax ledger two receipts to Cain, but neither of them in July. In this state of the evidence, and in the absence of the receipt, the trial judge would have been warranted in concluding that the tax paid by Cain was received during Graham's absence.

[5] We find that the evidence fails to connect Graham with the misappropriation of any of the funds of the office that might appear to have been missing or unaccounted for, with that degree of certainty which would warrant us in disturbing the judgment of the trial court.

Affirmed.