## RAILWAY MAIL ASS'N v. FORBES.
### No. 9651.

Court of Civil Appeals of Texas. Galveston.

April 11, 1932.

Rehearing Denied May 12, 1932.

Ross, Wood, Lawler & Wood, of Houston, for appellant.

Lewis Fisher, of Houston (C. E. Coolidge, of Houston, of counsel), for appellee.

GRAVES, J.

Pursuant to a jury's findings to the effect that the death of Archie A. Forbes—appellee's husband, who carried with appellant in her favor insurance against the loss of his life within one year through "accidental means" —did so occur, in that it resulted directly, independently, and exclusively of· all other causes, from a strain to his heart received in lifting a mail sack.in the course of his employment, and that he did not then or prior thereto have any disease of the heart that was a contributory cause, judgment was awarded her for the $4,000 called for in the beneficiary certificate she sued the association upon.

While not attacking any of these findings as being so against the weight of the evidence as to require a reversal on that account, appellant thus summarizes the grounds on which its appeal is based:

"(1) The statement of appellee, Lillie K. Forbes, that she knew her husband, the insured, was injured on November 16, 1928, and the statement of her son, A. G. Forbes, that he knew his father was injured on November 18, 1928, were conclusions of the witnesses and inadmissible.

"(2) The testimony of appellee, Lillie K. Forbes, as to statements made to her by the insured, Archie A. Forbes, on November 16, 1928, offered as res gestæ of an injury *alleged* to have been received on November 18, 1928, was at variance with the pleadings, immaterial, and irrelevant, and should not have been admitted over the objections made by defendant.

"(3) Statements of the insured supposedly to his wife and son upon his arrival home from work to the effect that he had hurt himself, and that he had hurt himself lifting a heavy sack of mail, were inadmissible over defendant's objections, (1) that they were hearsay, selfserving narration of a past event, the time and place of which was not fixed except by such statement, and there being no sufficient showing that such statements were spontaneous and unreflective and for this reason res gestæ, and (2) that such statements were the conclusions of the declarant, Archie A. Forbes, the insured; and (3) irrelevant and immaterial.

"(4) The trial court having ruled, and correctly so, that statements made to E. C. Winkle, a witness for plaintiff, by the insured, Archie A. Forbes, were inadmissible because hearsay and not shown to be res gestæ, it was obviously error for the trial court to admit an ex parte undated written statement of the witness Winkle given to the son of plaintiff in which such statements were set forth; and likewise error to permit such witness to be interrogated with reference to the substance of the signed statement when such statement was clearly inadmissible because it contained the hearsay statement of Forbes and the conclusions of Forbes and the statement itself was the ex parte, unsworn-to statement of the witness and his conclusion. For like reasons statements of appellee's counsel with reference to such statements while the witness Winkle was on the stand were inadmissible and extremely prejudicial to appellant.

"(5) E. C. Winkle, while on the stand as a witness for plaintiff, could not properly be impeached by appellee by the accusation that he did not care to recall the date upon which statements made to him by Archie A. Forbes were made and that he had been brought to the trial by appellant to testify upon its behalf, the witness not having declined to testify as to the statements made by Forbes—such statements having been held inadmissible—and the witness not having been shown to be hostile.

"(6) The testimony of the witness L. L. Boyer on cross-examination that on November 28, 1928, Archie A. Forbes, the insured, reported and said to the witness that he (Forbes) had strained himself on November 18, 1928, was inadmissible over the objections of defendant that such was hearsay and the conclusion of Forbes.

"(7) Argument of counsel for appellee hereinafter set out was without evidence to support it and extremely prejudicial.

"(8) The only evidence as to the fact of injury and the manner in which such injury, if any, was received by Archie A. Forbes, being the hearsay statements of Forbes and inadmissible, the court should have instructed a verdict for the defendant, and this court upon such determination should reverse the judgment of the trial court and render judgment for appellant.

"(9) Since the evidence was such that reasonable minds could not differ in the conclusion that the death of Archie A. Forbes, the insured, did not result alone from an injury to the heart caused by strain in lifting a mail sack, but instead—measured by the same test—was at least contributed to by chronic heart disease; and there being no proof of death by accidental means, the court should have instructed a verdict for defendant."

None of these presentments, we conclude, should be sustained.

The association is a fraternal benefit society, of which the insured was a member in good standing at the time of his death, having been regularly employed as a railway postal clerk at the Grand Central Depot in Houston when he was alleged to have received the declared upon injury; the substantive defense to the suit, as pleaded—aside from a demurrer and a denial, both general—was that the death was neither "the sole result of accidental means," nor did it occur without "disease, defect, or bodily injury being a contributing cause" thereof, as those terms were defined in the certificate; the trial court, in submitting the issues of fact the verdict so resolved, not only acceptably defined the meaning of these provisions as contended for by appellant, but affirmatively instructed that the burden of proving the existence of the strict conditions they called for was on the appellee.

█ Whatever the rule in other jurisdictions as to when, and under what conditions, declarations may be held admissible in evidence as part of the res gestæ, in Texas this brief résumé of it by our Supreme Court

in Railway v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902, is regarded as controlling: "Such declarations as are made under such circumstances as will raise a reasonable presumption that they are spontaneous utterances of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design, are admissible in evidence." For its application to varying states of fact, see, also, Pilkinton v. Railway, 70 Tex. 226, 7 S. W. 805; Railway v. Smith (Tex. Sup.) 14 S. W. 642; Dallas Hotel Co. v. Fox (Tex. Civ. App.) 196 S. W. 653; International Travelers' Association v. Griffing (Tex. Civ. App.) 264 S. W. 263; Southern Surety Co. v. Weaver (Tex. Com. App.) 273 S. W. 839; Employers' Liability Assur. Corp'n, Ltd. of London v. Flint (Tex. Civ. App.) 14 S.W.(2d) 1046, 1048.

Thus with us the restriction of the res gestæ doctrine so as to exclude all declarations that constitute a narrative of past occurrences, for which appellant's able counsel seem to argue, has been in the quoted-from opinion expressly and definitely declined by our court of last resort in following its previous holding to the same effect in Galveston v. Barbour, 62 Tex. 172, 50 Am. Rep. 519, although in so doing it conceded such restriction to be "probably the more logical."

The trial court was accordingly right, we think, in receiving the declarations here severally testified to by the wife and son of the deceased insured, as being within the requirements so laid down by our courts, in view of the circumstances attending and inducing them; while there was obvious confusion on the part of one or the other, or of both, as to the exact date of the occurrence, the mother putting it on the 16th of November, while the son said the 18th, they united in affirming, that it was at all events the morning of Mr. Forbes' return home from his last tour of duty as a United States government railway mail clerk; he was then working at night from midnight till about 8:30 a. m., rode the street car to and from his place of duty, allowing about 30 minutes for that purpose, was very regular in his habits with reference to coming home, and usually got home between 9 and 10 o'clock a. m.; on the morning in question he returned home instead at about 7 o'clock, the further statements of the two witnesses being, in substance, as follows:

That of Mrs. Forbes:

"I asked him why he was so much earlier, and he said because he had hurt himself;

"He said he had hurt himself lifting a heavy sack of mail;

"He told me he had hurt himself about 6:30 o'clock lifting a heavy sack of mail, and had hurt his back and chest, and that the pain was in his back and chest;

"That morning his face was drawn, and it showed that he was suffering; he had his hand over his heart like this."

That of the son:

"When my father came in, on account of the unusual time of his coming in, we asked him, or rather Mother asked him, what was the matter; why he was coming home at that time. I was there with her and we were eating breakfast, and she asked him why he was coming in at that time of morning, and he said he had hurt himself at 6:00 o'clock or a little later and had to come right home. Our home is about 2½ or 3 miles by the car line from where my father worked. My father said he hurt himself lifting a very heavy sack of newspapers and magazines that were in the regular mail down at the terminal;

"He said that pains he had from it were in his chest and back, and he would hold his hand like this in the region of his heart, which would indicate where the pains were. * * * That morning his face looked drawn like he had pain, and he said he had pain;

"I do know that my father did not complain of anything else except pain in his heart on that morning when he came home early; about which I testified. He indicated by his hand where the pain was;

"When my father came in on that morning his appearance was not unusual except his facial expression. When he usually came in he was cheerful and talked to us. He usually came in and sat down and talked to Mother. On some mornings I would have an 8:00 o'clock class and on other mornings I would have a 10:00 o'clock class, and on the mornings I had a 10:00 o'clock class I would have a few minutes and he would talk to me before I left and then he would go in and go to sleep. On this morning in question he didn't stop for anything. He said he didn't feel like stopping to talk and he went on in and undressed and went to bed. He didn't have much to say except that he had hurt himself and didn't feel like sitting up at all. As I said, my father was usually cheerful but that morning his face looked drawn just like he had pains and he said he had pains. Also he went right on and went to bed. He did not usually go to bed immediately after getting home. He would sit around an hour or so and talk and do little things he wanted to do. He was usually pretty tired when he came home in the mornings and he usually would go to bed and sleep three or four hours but he didn't usually go right to bed. Sometimes if he wasn't tired he would work around the yard until he got sleepy and then he would go to bed but he was not in the habit of going to bed as soon as he got home."

Further, while the wife and son made no mention otherwise of having seen visible in-

dications on Mr. Forbes' body of the pain he thus complained to them of, the physician who examined him on November 21st, which, considering all of the testimony, may have been the day on which the accident he so reported occurred, did testify to having then found such objective symptoms of an injury, saying: "I then examined Mr. Forbes, and found that he had a contraction of the muscles in the spine on the left side from the first to the fifth dorsal—that is, from the neck down to this area across that part of the spine. I found swelling and contraction of the muscles in the chest in the region of the rib where it articulates with the breast bone or sternum in the region of the fourth and fifth ribs over the heart. * * * There was an intense contraction and swelling of the muscles in the back."

No reason occurs to the court for not holding these expressions as natural and spontaneous as those of the child to its mother in the Barbour Case, supra, nor the attending circumstances less potent in negativing a presumption that they resulted from premeditation or design than those in the cited Flint Case, of which this court said: "There is nothing in the circumstances of this case to show that the statements were the result of premeditation or deliberate design. * * * There is nothing to show that he [the deceased] hoped to gain anything by the statements. * * * There is nothing in the evidence to cast any suspicion or raise any doubt of the truth of the statements."

█ The complaint of a variance between the pleading and proof as to the date of the injury, in that it was alleged to have occurred on November 18th while the testimony offered placed it two days prior, is sufficiently disposed of by the showing that, whatever error in stated dates appeared, the pleading and supporting evidence alike further exhibited that it happened on the last day the insured ever worked at his position of railway mail clerk.

█ The testimony of Mrs. Forbes and of her son to the effect that they knew Mr. Forbes had sustained an injury constituted statements about a matter concerning which they could have had personal knowledge, and were receivable against the mere objection that they only amounted to their conclusions, there being neither then in evidence nor thereafter developed any facts disclosing that either lacked such actual knowledge. Kincheloe Irr. Co. v. Hahn Bros., 105 Tex. 231, 146 S. W. 1187; Mo. Pacific Ry. Co. v. Sherwood, 84 Tex. 125, 19 S. W. 455, 17 L. R. A. 643; Norris v. Lancaster (Tex. Com. App.) 280 S. W. 574; Millers' Indemnity v. Hughes (Tex. Civ. App.) 256 S. W. 334; Ft. Worth & Denver R. Co. v. Ryan (Tex. Civ. App.) 271 S. W. 397.

█ As concerns appellant's copied contentions numbered 8 and 9, the former has been answered in holding the declarations of the deceased admissible, while the latter is conclusively determined the other way by the finding that no such asserted state of evidence existed; on the contrary, these issues of fact the learned court below submitted to the jury were not only raised by the pleadings and proof, but the favorable answers to the appellee on all of them had sufficient support in the testimony.

"No. 1. Did or did not the death of Archie Forbes, the insured, result directly, independently, and exclusively of all other causes, from a strain to his heart received in lifting a mail sack at the time and place alleged by plaintiff? Yes.

"No. 2. Was the act of Archie A. Forbes, in lifting the mail sack, external, violent, accidental means? Yes.

"No. 3. Did or did not Archie A. Forbes have any disease of the heart at or prior to the time of the alleged injury? No.

"No. 4. Was such heart disease a contributory cause of the death of Archie A. Forbes? No."

The most that can properly be urged on these questions is that there were sharp conflicts upon them—not that there is no evidence, which alone is appellant's assignment, —since there was, taking that together from both medical and lay sources, at least some competent evidence to the effect that, not only did Mr. Forbes have no heart or other chronic disease prior to his alleged accident, but also that an injury such as that claimed to have happened to him might have and in all probability did wholly cause his death; without recapitulating it here, it is enough to say that, unmistakably, the testimony of members of his family, reinforced by that of the family physician from an examination made by him about November 15, 1928, to his long-continued and invariable good health, with accompanying freedom from complaints or disability of any sort prior to this occasion, raised the first of these issues, while that of the physician as to the results of his further examinations made immediately afterwards likewise did the second one.

█ There is much of this evidence in the record, and the physician, who was shown to be duly qualified and licensed to practice medicine and surgery, was not only privileged to, but did give his opinion to the effect, that, based on his experience and the examinations he had made of the deceased, together with his findings at the time which he fully detailed, that a strain or overexertion had caused the injury from which alone the death resulted.

██ The challenged proceedings relating to the witnesses Winkle and Boyer, under

appellant's quoted numbers 4, 5, and 6, should not, it is thought, work a reversal of the judgment, mainly for these reasons: As affects Winkle, although he was the appellee's witness, it was at least permissible for her—by way of refreshing his memory as to matters he had already testified vaguely about—to exhibit to him an undated written statement purporting to carry his signature, and, as she did, to ask him in detail whether or not he had signed it, and, if so, what date, year, time of the day, etc. Sparks v. Johnson (Tex. Civ. App.) 235 S. W. 975; Newberger v. Heintze, 3 Tex. Civ. App. 259, 22 S. W. 867; Western Union v. Vickery (Tex. Civ. App.) 158 S. W. 792; Latham v. Jordan (Tex. Com. App.) 17 S.W.(2d) 805. His answers to this much of what the bill of exceptions shows took place were clearly admissible, whether others were or not, but appellant's objection went only to all the questions and responses as a whole, wherefore it was properly overruled. St. Louis S. W. Railway v. Moore (Tex. Civ. App.) 173 S. W. 905.

■ After the witness, when on the stand, had thus identified the statement as his own, which in substance was that he "heard Mr. Forbes complaining on the morning saying he thought he had hurt himself; that he also asked him to feel of his heart, and it was beating rather rapidly, whether from exercise in pulling the sack he (Winkle) could not say," its receipt in evidence was not prejudicial, since he further testified, not only that everything in it was true, but independently and without objection to substantially all the facts it contained; moreover, it does not appear, under all the accompanying details brought out, either, on the one hand, that the recitals therein reflected were conclusions of Winkle, rather than the statement of facts, or, on the other, that the quoted declarations of Forbes it reflected were not admissible under the res gestæ rule. If, however, its admission could properly be said to have been error, no harm would appear to have ensued, since the same things otherwise were brought out without objection.

■ As concerns Boyer, an officer of the association, testifying in its behalf by the aid of its official files, on cross-examination he was asked: "Where is the report that Mr. Forbes made any claim that he was injured?" To this he answered, no objection having been made at the time: "On November 28th he was in the office and reported that he had strained himself on November 18th." Appellant neither raised the point that the answer was not responsive to the question, nor asked any limitation of it, but then moved to strike it out on the sole ground that it was both hearsay and the conclusion of Forbes; following the refusal of the motion, however, appellant itself, on redirect examination of the witness, voluntarily again went fully into the matter, and in addition to what had thus resulted from the appellee's question, brought out the further statement that Forbes had reported that he had strained himself "in handling some mail"; thereupon appellee also upon recross was allowed, without objection, to propound further inquiries concerning the subject. Obviously, in these circumstances, appellant was in no position to complain of the presence in the record of the challenged answer; hence there was no such error as should cause a reversal.

■ The arguments objected to, all made by counsel for the appellee in opening the case to the jury, were:

(1) "I want you to bear in mind the testimony and the conduct of that man Winkle on this witness stand yesterday or the day before; a gentleman who was subpœnaed and brought here by the defendant in this case. I wanted his testimony and I knew perfectly well, gentlemen of the jury, I knew as well as I knew there is a God in Heaven and that the sun came up today, that the defendant would not produce him here as a witness."

After objection from opposing attorneys and a suggestion by the court, "That is not part of the record, Judge," counsel for plaintiff stated: "I will withdraw it. But (continuing) gentlemen, I put him on the stand knowing he had been subpœnaed by the defendant and tried to corkscrew and gimlet hole and get him in every way to tell the facts in this case and he remained silent."

(2) "There was a man (counsel referring to the witness Winkle) who was present and who knew something of the facts in this case but he don't remember them, gentlemen, and I couldn't even get him to tell you whether Mr. Forbes worked down there during the month of November, 1928, at any time, day or night, during the month.

"Such argument of plaintiff's counsel was without evidence to support it, unless it be considered that such argument was a comment upon the attitude of the witness, which was the ground upon which the court thought the argument proper and allowed it to stand."

(3) "But he (E. C. Winkle) did testify that Mr. Forbes made some sort of statement to him and he also said that Mr. Forbes laid off and said he was hurt. Further than that I could get nothing from him. The other witness, Killough, was also as reticent. I do not and I cannot understand. Here is a concern that is operating in this state under the law without a license, not charged a license fee because they are a fraternal benefit association, and I cannot understand to save my life the reason why they are here united in one grand phalanx and body trying to defeat this claim and refusing to give definite facts and circumstances connected with the injury."

"(The attorney here referring to records offered in evidence by the defendant shown as Exhibits 'B' to 'R' inclusive, at close of Statement of Facts)."

As the quotations show, save for a single mention of one other, these arguments all revolve mainly around the witness Winkle, his testimony and demeanor on the stand, and, presumably from the express statement of the trial court to that effect in the second of them, were allowed to stand on the feeling that they did not in the circumstances constitute improper comment on the attitude of that witness.

After careful consideration of the record on the matter, this court is constrained to take the same view; it seems to us to present a peculiarly applicable instance of where the sound discretion of the judge who presided over the proceedings, in person heard the testimony, and observed the actual conduct of the participants, is the better guide. While some of the language seems strong, at least on first blush, the evident disinclination of the witness to disclose what he must have known was equally or more so; it seems plain, even from the written record of his examinations alone, that essentially he was the witness of the appellant and unmistakably leaning toward it, whether he had been so subpoenaed or not, and even this he denied any knowledge of; wherefore, the absence of such a subpoena from the record did not take from opposing counsel the right to in substance characterize him as such.

 To read the details of counsel's effort to get him to fix the date of the occasion of Mr. Forbes' reported remarks to him, as well as whether or not Forbes worked there at any one time during November of 1928, and of his obvious persistence in escaping even an approximation of either, is, when other disclosed facts and circumstances are taken into consideration, to justify the former's statement that he remained silent when he should have spoken; moreover, the first two statements in argument (3) are undisputedly shown to be true, so only the concluding one in it can be presented as false and inflammable.

As thus isolated and reconsidered, it does not so impress us, but rather as merely an overembellished inference legitimately deducible from facts and circumstances that were in evidence; the appellant association was in the lawsuit as a fraternal benefit organization—a band of brothers, who so termed each other—attempting to defeat the claim of the appellee, the widow of one of its deceased members, as well as the holder and beneficiary of one of its outstanding certificates; and the facts, taken as a whole, clearly seem to have justified the conclusion that it "was putting her to the task of proving it up, not only without assistance from it, but in the face of 'very niggardly revelation" of information one sustaining her relation toward it might fairly expect. For example, the apparent declination of the witness Winkle, a member of the association, to remember anything at all with reference to whether or not his brother-member, Forbes, along with whom he had been regularly serving, had worked there at any time during the month of November of 1928, and the refusal of Mr. Boyer, its financial secretary, to show the son of the deceased member when trying to find out the date his father last worked the association's records, of which he had custody.

Wherefore, the statements all having been made at the inception of arguments to the jury, with time and opportunity inuring to opposing counsel to both correct any misstatements of fact and reply to all adverse inferences drawn, and the action itself not having been one for unliquidated damages the jury were called upon to assess, but upon a policy of insurance for an agreed amount with the fixing of which the jury had nothing whatever to do, we are unable to hold, in the circumstances appearing in this record, that reversible injury should be presumed to have flowed from them as a matter of law.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal; since they require an affirmance of the judgment entered below, it has been so ordered.

Affirmed.