**BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES, Appellant,**

v.

**Opal DAHN, Appellee.**

No. 3208.

Court of Civil Appeals of Texas.

Waco.

Nov. 4, 1954.

Rehearing Denied Nov. 24, 1954.

R. A. Kilpatrick, Cleburne, for appellant.

Glyndon M. Hague, Gean B. Turner, Cleburne, for appellee.

HALE, Justice.

Appellee, Mrs. Opal Dahn, sued appellant for benefits alleged to be due her under a policy of insurance on account of the death of her husband. The policy excluded indemnity for loss caused by suicide. Appellant denied liability on the ground that appellee's husband had committed suicide by shooting himself. Upon the conclusion of the evidence the court submitted the case to the jury on the following special issue: "Do you find from a preponderance of the evidence that Mr. Eldon G. Dahn, on or about December 6, 1952, on the occasion in question, shot himself intentionally?" The jury answered the issue "No." Thereupon, the court rendered judgment for appellee, and hence this appeal.

Appellant says the judgment should be reversed (1) because the court erred in refusing to admit in evidence, as part of the res gestae, the testimony of three policemen relating to conversations with the daughter of the deceased after the shooting and (2) because of improper arguments of counsel for appellee to the jury.

The tragedy occurred in the home of Mr. and Mrs. Dahn about 2:00 o'clock in the afternoon on Saturday, December 6, 1952. According to the testimony of appellee, she and her husband had lived together happily for a little over twenty years. Her husband worked for the Santa Fe Railway Company five days each week, but he did not work on Saturday. Appellee testified that shortly after lunch on December 6, 1952, her husband stated he was going bird hunting. He went into another room in their home where he kept his single barrel shotgun in his clothes closet. Appellee then heard an explosion and when she went into the room where the explosion had occurred she found her husband fatally wounded with the shotgun lying near his body. She immediately called to a neighbor for help, and then called over the telephone for an ambulance. Upon arrival of the ambulance, her husband was taken to the hospital and she attempted to follow the ambulance in the family car. She testified in effect that she was greatly agitated and under emotional strain for a considerable length of time after the shooting had occurred.

Sometime after appellee and her wounded husband had departed from their home for the hospital, the exact time not being shown, policeman Street arrived at their home. He estimated the time of his arrival as being about twenty minutes after he had received a telephone call from someone to come to the scene of the shooting. Upon arrival at the Dahn home, he found an elderly lady (presumably the neighbor to whom appellee had called for help) and the nine year old daughter of Mr. and Mrs. Dahn. The testimony which he would have given before the jury, if he had been permitted to do so, was substantially as follows: "I asked her (meaning the girl) what had happened and she said that her mother and father had had a quarrel, and that her daddy had went into this bedroom and shot himself. I asked her how did she know that, and she said she was standing there in the kitchen when he shot himself"; that he did not remember whether the girl tried to tell him how her father "held the gun, or anything like that"; that she did not say anything about what her parents were quarreling over; that "she said quite a few things, of course, that have slipped my memory. All I could do was —I just remember questioning her enough to find out that there was no criminal connection with the case"; and that "the little girl was holding her feelings very well. Q. She wasn't hysterical? A. She wasn't hysterical or anything, and she was very rational in her conversation." The court sustained objections to the proffered testimony on the ground that it was hearsay and such testimony was not admitted in evidence before the jury.

In the case of Pilkenton v. Gulf, C. & S. F. Ry. Co., 70 Tex. 226, 7 S.W. 805, 807, the Supreme Court said: "As to what is *res gestae* depends much upon the circum-

stances of each particular case. The doctrine is based on the presumption that declarations made at the time of the act, or transaction, or event to which they relate, evoked by it, without premeditation, are part of the act, or transaction, or event. To be a part of the *res gestae* the declarations are not required to be precisely concurrent in point of time with the principal transaction, if they spring out of it, are voluntary and spontaneous, and are made at a time so near as to preclude the idea of deliberate design. McGowen v. McGowen, 52 Tex. 657. The rule is very latitudinous, and its application must be left largely to the judicial discretion of the trial court." To the same effect is the holding in the following cases: Southern Surety Co. v. Weaver, Tex.Com.App., 273 S.W. 838; Richardson v. Watson, Tex.Civ.App., 105 S.W.2d 473 (er. dis.); A.B.C. Storage & Moving Co., Inc., v. Herron, Tex.Civ.App., 138 S.W.2d 211 (er. dis. Jud. cor.). See also: 17 T.J. p. 616; Tex. Law of Evidence by McCormick & Ray, p. 549, Sec. 431.

It is readily apparent that the statements which the daughter of appellee made to policeman Street were not spontaneous, but were made by her in response to direct questions propounded to her by the officer in order that he might "find out that there was no criminal connection with the case." They were not made, according to the testimony of the policeman, under any stress of emotion or excitement. In Hendrix v. State, 105 Tex.Cr.R. 463, 289 S.W. 38, the court said: "We know of no authority holding that one who makes a statement 15 or 20 minutes after the occurrence, which statement is made calmly and coolly and collectively, can have the statement held admissible on the theory of res gestae."

■ Within approximately 15 or 20 minutes after policeman Street had left the Dahn home, two other policemen arrived and they would have testified, if permitted, that the daughter of Mr. and Mrs. Dahn made substantially the same statements to them which policeman Street would have testified she made to him, but the court refused to admit the hearsay testimony of any of the policemen as a part of the res gestae. Under the circumstances shown by the record and the law applicable thereto, we cannot say the trial court abused the discretion vested in him by refusing to admit the proffered testimony in evidence, or that his rulings in that regard constituted reversible error.

Appellant complains of four excerpts from the argument of counsel for appellee to the jury. Counsel for appellee stated: "It is uncontradicted that they were happy and got along (referring to Mr. and Mrs. Dahn). And he had love for his children. Not a single neighbor has come in and testified that there was ever any difficulty between them, not a one; there isn't a shred of evidence; their horde of investigators couldn't find a thing to bring in here." Counsel for appellant objected to the "horde of investigators" on the ground that such statement was without any support in the evidence.

In discussing the circumstances under which the deceased must have removed his shotgun from the closet, counsel for appellee said: "What is more reasonable to assume, that the man reached into the closet and grasped the gun and pulled it towards him, and as he pulled it towards him, as you would, certainly you would, pulled it towards him that way, and it exploded and hit him in the shoulder. Is that any way to kill yourself, take a shotgun and shoot your shoulder off?" Counsel for appellant objected to the statement that the deceased's shoulder was shot off because, as stated in the objection, "the testimony was it came out from under the arm. I except to the argument that the shoulder was shot off."

Counsel for appellee also stated in his closing argument to the jury as follows: "Let's be fair with her. She is no match for the insurance company. Let's don't presume her out of her little one thousand dollar policy. Let's don't be presumptive so much so that you are presuming a man clear out of life and on into purgatory." Counsel for appellant objected "to the purgatory part. There isn't a word in here about that. He may be in heaven."

In his closing argument to the jury, counsel for appellee pitched a small coin, either a dime or a penny, on the floor in front of the jury and said: "I know this case with the insurance company is just like pitching pennies at a crack, but to her —." Counsel for appellant objected and excepted to the argument on the ground that it was improper and prejudicial and called the jury's attention to the difference in the financial condition of the parties.

The record shows that the trial court sustained each of the foregoing objections and instructed the jury in each instance not to consider the argument to which objection was interposed. The record does not show that counsel for appellant requested the court at any time to declare a mistrial or to discharge the jury on the ground that the arguments complained of were so inflammatory that the prejudicial effect thereof could not be removed by instructions from the court to the jury not to consider the same.

■ Under the provisions of Rules 434 and 505, T.R.C.P., a judgment should not be reversed on account of argument of counsel to a jury unless the argument complained of was such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Aultman v. Dallas Ry. & Terminal Co., Tex.Sup., 260 S.W.2d 596; Hobbs v. Slayton, Tex.Civ.App., 265 S.W.2d 838 (er. ref. n.r.e.) Furthermore, it will be presumed on appeal that a jury obeyed the instruction of the trial court not to consider objectionable argument unless the argument is so inflammatory that it cannot be cured by instruction. Dallas Ry. & Terminal Co. v. Bishop, Tex.Civ.App., 203 S.W.2d 651 (er. ref. n.r.e.) Fauth v. First Nat. Bank of Granbury, Tex.Civ.App., 214 S.W.2d 168; Traders & Gen. Ins. Co. v. Stone, Tex.Civ.App., 258 S.W.2d 409.

■ Appellant does not seek a reversal of the judgment appealed from on the ground that the finding of the jury was so clearly against the overwhelming weight and preponderance of the evidence as manifestly to be wrong and we do not think any such contention could have been successfully made because, in our opinion, reasonable minds might well have concluded from the evidence as a whole that appellee's husband did not shoot himself intentionally. Consequently, we do not think this court would be warranted in holding from the entire record that any of the improper arguments to the jury of which complaint is here made probably caused the rendition of an incorrect judgment in this case, or that such arguments were so inflammatory that the prejudicial effect thereof, if any, was not removed by the instructions which were given to the jury by the trial court.

Therefore, all of appellant's points are overruled and the judgment of the court below is affirmed.