HOUSTON & T. C. R'Y Co. v. W. R. COWSER AND WIFE.

(Case No. 4452.)[1]

1. DAMAGES — PLEADING.— In a suit for damages against a railway company for the negligent killing of plaintiffs' son, the fact that the petition showed that the son was over twenty-one years of age at the time of his death, would not make the petition subject to demurrer.

2. DAMAGES — PLEADING.— In a suit for damages against a railway company for personal injuries caused by the negligence of its agents, it is not necessary that the petition should negative by its averments the existence of contributory negligence on the part of the person injured,·unless it contain allegations which, unexplained, would establish a *prima facie* case of negligence of the injured party.

3. MEASURE OF ACTUAL DAMAGES.— The measure of actual damages in a suit by a parent for the killing of his son by a railway company is the actual pecuniary injury which resulted from the act complained of, and this is not necessarily confined to the period of the son's minority.

4. EVIDENCE OF EXPERTS.— In an issue involving the question of negligence of a railway company in the management of a switch from which it is claimed that damage results, it is competent for the defendant to introduce evidence of the mode adopted generally by prudent railroad men in switching their cars under like circumstances.

5. MEASURE OF DAMAGES.— The measure of damages to which a parent is entitled for the negligent killing of his son by a railway company, suggested as being such a sum as would purchase an annuity equal to the value of the pecuniary aid which the parent would have derived from the deceased, calculated on the basis of all the facts and circumstances of the particular case, reasonably accessible in evidence, and including the probable duration of life. In such a case the plaintiff should give evidence of such facts as would furnish the basis for a verdict; such as the circumstances of the deceased, his occupation, age, health, habits of indus-

[1] The record in this cause was not accessible when it should have been reported.

try, his sobriety and economy, his skill and capacity for business, his annual earnings, and the probable duration of his life. In the absence of such evidence, there is no standard by which to test the correctness of a verdict in such a case.

6. DAMAGES.— Though, under the statute, actual damages may be recovered for death caused by the unfitness, gross negligence or carelessness of the servants or agents of a railway company, as well as for the negligence or carelessness of the proprietor, owner, charterer or hirer, yet exemplary damages will be allowed only for the willful act, omission or gross negligence of the "defendant". to the suit, for the willful act, omission or gross negligence of one representing the corporation in its corporate capacity, not a mere ordinary agent or servant.

7. DAMAGES.— An express willful intent to do an injury resulting in damage cannot be imputed to the principal when the injury was inflicted by an employee, and when the wrongful act has neither been authorized or ratified.

ERROR from Robertson. Tried below before the Hon. W. E. Collard.

Suit brought July 26, 1880, by the defendants in error, Wm. R. Cowser and wife, against the Houston & Texas Central Railway Company, to recover damages resulting to them as the parents of Wm. R. Cowser, Jr., on account of his death, which, it is alleged, occurred in Hearne, the 12th June, 1880, and was caused by the gross negligence and carelessness of the agents, servants and employees of the railway company, in switching their cars. The evidence showed that Wm. R. Cowser was over twenty-one years old at the time of his injury and death. Plaintiff in error answered by general demurrer, plea of not guilty, and plea of contributory negligence.

Demurrer to the petition was heard and sustained as to second count, claiming exemplary damages, and overruled as to the first count, in which actual damages only are claimed.

The verdict of the jury was for plaintiffs below for nine thousand dollars ($9,000), and judgment rendered thereon.

Motion for a new trial was overruled, and notice of appeal given. The appeal was not perfected, but the petition for writ of error was filed, together with the bond; and the case brought up to this court by writ of error.

The evidence showed that Hearne was the end of the division, and that a great deal of switching had to be done there; that there are nine switches in the yard, about eight feet apart, and that the flat-car on which deceased was standing at the time of the accident was on the west outside switch near its north end; that the afternoon deceased was killed, the yard-master was engaged in switching; that he threw two box-cars on the same track where deceased, with two other men, were working, unloading lumber from a flat-car, and rode them down himself and set the brakes; that at that time deceased

was standing on the ground near the lumber car, and he called to deceased and asked him to set the brake on the lumber car, and that deceased ordered John Burnell to set the brake, and he did so. That he then let the two box-cars go down and strike the lumber car. That he then ran up and threw one car in on another track, and then cut two box-cars loose and ran them in by themselves on the same track where the two box-cars and the lumber car previously mentioned stood. That when backing down to couple other cars he was informed by the brakeman that they had run over a man; that he signalled the engine to stop and ran to where the man was killed; that he recognized the injured man as Wm. R. Cowser. The yard-master did not see deceased fall from the car. When he last saw him, about two minutes before the accident, he was on the ground. The box-cars switched in were cut loose above the north end of the switch and ran down thirty-six steps to where they struck. The flat car was moved about six feet — ascertained by measurement afterward,— and one wheel passed over body of deceased, and that was the front wheel of the box-car next to the flat-car. At the time of the accident there were two other men on the lumber car. The deceased was standing near the rear end of the car, about two feet from the end, with his back towards the cars that were being switched in, and when the car was struck he fell between the cars. The other two men did not fall.

As to the manner of switching and the velocity of the cars, witnesses differed somewhat. John Burnell, who was on the car assisting in unloading the lumber at the time of the accident, testified: That the two last cars switched in were cut loose from the engine and came in on a running switch. These cars were thrown in immediately before deceased was killed, and they came in tolerably fast. There was no one standing upon them or controlling them when they came in. They were stopped by hitting against two box-cars, already on the track, and they struck with sufficient force to drive them against the flat-car on which, at the time, deceased was standing, and the concussion was so great as to cause deceased to fall off backward between the flat car and the box-car next to it, when the said last car ran over his body and killed him. This witness heard no bell ringing or signal given while the switching was going on.

Dave Young, the other witness who was on the flat-car with the deceased, assisting in unloading lumber at the time of the accident, testified substantially as above in relation to the switching and signals.

J. L. Pannell testified: That he had been a railroad man eleven years, and for seven years of that time had been yard-master. That the usual and customary way of switching in a yard, where cars have to be switched on different tracks, is to cut loose the cars and let them run down lightly, and, if going too fast, somebody checks them. That the box-cars he put in were not put on at a running switch. In making a running or flying switch, the engine is headed toward the switch, and, when near it, the cars are cut loose from the rear, the engine run upon the main-track, and then the switch is suddenly changed so as to run the cars that have been cut loose off on the side-track. That at the time of this accident the cars were backed down and cut loose and run on the side-track, while the engine was drawn off the other way. That he cut loose the cars, and they moved on the side-track slowly. Witness did not remember whether the bell was ringing on the engine or not, but it is usual to ring the bell when making switches or going over crossings. This witness made a diagram of the tracks where the accident occurred, showing eight switches in the yard, and the one where deceased was killed being the most westerly from depot.

John Henry, the engineer, testified, substantially, that he was the engineer in charge of the train and doing the switching at the time of the accident. That he had been an engineer about six years. That the last two box-cars thrown in on the side-track where Cowser was killed were in the rear of the train, and were backed down near to the junction of the switch with the other track. When near the switch they were uncoupled from the train and allowed to run in upon the switch, while the engine pulled off in the opposite direction. There was nothing unusual in the way these cars were put on the side-track. Did not see the deceased at the time he was killed, and did not know that he was on the flat-car. Witness was positive that the bell was ringing at the time.

Ben Tucker (fireman) testified: That he was the fireman on the engine engaged in switching at the time. That he was positive the bell was ringing at the time the two last box-cars were thrown in on the side-track that the flat-car stood on. That he himself was ringing it when the accident occurred.

Harry Woodruff, at the time in the employ of the defendant company and the I. & G. N. R. R. Co. also, testified that he heard the bell ringing at the time of the accident. That he was at Bailey's store, about one hundred or one hundred and fifty yards distant, and just after it occurred some one questioned if the bell was ringing, and he then knew it was — that he heard it.

The plaintiffs alleged in their petition that the defendant's carelessness caused the death of their son without any fault or negligence on his part while switching their cars.

At the time of his death, deceased had control of the lumber business of Griffiths & Cowser, at Hearne. Two-thirds of deceased's earnings went to the support of his parents and their minor child. Deceased left no wife or children. That for four or five years previous to his death, deceased had given his parents all the assistance he could. That for two years before he went to Hearne he had worked for his father and assisted in supporting the family and helped to raise cotton; that deceased was possessed of good moral habits. He had gone to school at Tehuacana; that he graduated in book-keeping; that he was quick at figures, and very steady, and never drank. Smith says deceased was a good business man, had a very good education. Drennan says deceased had a liberal education; that he was educated at Tehuanaca; that he had good energetic business habits.

*Beall & Kemp*, for plaintiff in error.

I. The law confers upon parents no right to require the services of an adult son, and it being shown in the petition, and by the evidence, that the plaintiffs' son was more than twenty-one years of age at the time of his death, and not living with his parents, the defendant was not liable in this action. H. & T. C. R. R. Co. v. Nixon, 52 Tex., 19; I. & G. N. R. R. Co. v. Miller, 49 Tex., 322; Wood on Master and Servant, secs. 14–224; Field on Damages, § 640 and notes; Oakland R. R. Co. v. Fielding, 48 Pa., 320; Pa. R. R. Co. v. Zebe, 33 Pa. St., 318; Peck v. Mayor of New York, 3 Comst., 489; Potter v. Chicago R. R. Co., 21 Wis., 372; Ford v. Monroe, 20 Wend., 210; Penn. R. Co. v. Banton, 54 Pa. St., 495.

II. The court erred in the fifth section of the charge, to the effect that if the said Cowser was on the flat-car by permission of the defendants, or under any contract or agreement with them attending the unloading of the cars, then that he had a right to be on the car for that purpose; because there was no evidence to support the issue as to any contract or agreement between the defendant company and said Cowser, and said charge was calculated to mislead the jury. Walker v. Herron, 22 Tex., 56; Railroad Co. v. Murphy, 46 Tex., 357; 2 Greenl. Ev., § 473; Allyn v. Boston & Albany R. R. Co., 105 Mass., 77; Gleeson v. Breeman, 50 Me., 222, 224; Bush v. Davenport, 6 Iowa, 443; Way v. Ill. R. R. Co., 40 Iowa, 341; Kepperly v. Ramsden, 83 Ill., 354; Beers v. Housatonic R. Co., 19 Conn., 556;

Vicksburg v. Hennesy, 54 Miss., 391; Detroit R. Co. v. Steinburg, 17 Mich., 99; Evansville R. R. Co. v. Dexter, 24 Ind., 411.

III. The court should have granted the defendant's motion for a new trial, on the ground that the verdict of the jury was clearly contrary to the evidence in their finding that the agents and servants of the company were guilty of gross negligence in the act of switching their cars, and that the negligence of Cowser did not contribute to the injuries that caused his death. Willis v. Lewis, 28 Tex., 191; Shearman & Redf. on Neg., § 481; C. B. & I. G. R. Co. v. Stumps, 55 Ill., 373; Lake Shore & Mich. R. Co. v. Miller, 25 Mich., 276; B. R. R. Co. v. Hunter, 33 Ind., 365; North Penn. R. Co. v. Heilman, 49 Pa. St., 60.

IV. The court erred in not granting a new trial because the evidence did not support the verdict in respect to the pecuniary loss sustained by the plaintiffs in the death of their son, and the damages assessed were excessive in amount. H. & T. C. R. Co. v. Knapp, 51 Tex.; Thompson on Neg., vol. 2, p. 1290 and notes; Field on Damages, § 626 and notes; Spicer v. C. & N. W. R. R. Co., 29 Wis., 580; Potter v. C. & N. W. R. Co., 22 Wis., 616; Ohio R. Co. v. Tindal, 13 Ind., 366; Telfer v. N. R. R. Co., 30 N. J. (1 Vroom), 188; Oldfield v. H. R. R. Co., 14 N. Y., 310; Tilley v. Hudson R. R. Co., 29 N. Y., 252; Donaldson v. Miss. R. R. Co., 18 Iowa, 280; Green v. Hudson R. Co., 32 Barb., 25; David v. South West R. R. Co., 41 Ga., 223; Rose v. Des Moines R. Co., 39 Iowa, 255; Quinn v. Moore, 15 N. Y., 432; Chicago v. Hessing, 83 Ill., 205; Lehman v. Brooklyn, 26 Barb., 239; Dalton v. S. E. R. Co., 4 C. B. (N. S.), 296; Coudon v. The Great S. W. R. Co., 16 Irish L., 415.

*Rector & Rector*, for defendants in error.

I. Parents can recover the pecuniary damages they have suffered from the death of an adult unmarried son, killed through the gross negligence of the servants of a railroad company. Pierce on Railroads, pp. 398, 399, notes 2 and 5; R. S., arts. 2903, 2909; Shearman & Redf. on Neg., §§ 299, 612; Penn. R. R. Co. v. Adams, 55 Pa. St., 499; 2 Redfield on the Law of Railways, § 195, subd. 8; Railroad v. Barrow, 5 Wall., 90, reported in Red. Am. R. R. Cases, vol. 2, 472; Groten Kemper *et als.* v. Harris, 25 Ohio St., 514; Franklin v. Southwestern R. R. Co., 13 Hurlst. & N., 211; Pym v. Great Northern R. R. Co., 4 Best & S., 396; Oldfield v. New York & Harlem R. R., 14 N. Y., 310; Tilley v. Hudson River R. R. Co., 29 N. Y., 252.

II. The facts in evidence showed that deceased was on the flatcar by permission of defendant, and were sufficient to establish an

implied contract and agreement that deceased should unload the cars, and justified the charge of the court.

III. The charge of the court as to the measure of damages was proper, and the charge asked by defendant on that subject was correctly refused. R. S., art. 2909; Pierce on Railroads, pp. 393, 394, 395, note 7; 396, note 4; 597, note 3; Shearman & Redf. on Neg., §§ 611, 612, 613; 2 Redfield's Law of Railways, § 195, subd. 5, notes 3 and 8; 2 Red. Am. R. Cases, 466 and 472; Tilley v. H. R. R. R. Co., 29 N. Y., 252; Oldfield v. N. Y. & H. R. R. Co., 14 N. Y., 310; Baltimore & Ohio R. R. v. Wightman's Adm'r., 29 Gratt., 431; Groten Kemper v. Harris, 25 Ohio St., 510; Penn. R. R. v. Ogier, 35 Pa. St., 70; Bunton v. S. W. R. R. Co., 82 N. C., 507; 19 Kan., 83. The evidence of John Henry and J. L. Pannell, offered as that of experts, was not competent testimony. 1 Greenl. Ev., § 440.

IV. The evidence showed no negligence upon the part of deceased, and gross negligence on the part of the agents and servants of defendant in switching the cars, and the jury were justified in so finding. Kay v. Penn. R. R. Co., 65 Pa. St., 269; Minnie Baches v. Ill. C. R. R. Co., 55 Ill., 379; Chicago & Alton R. R. Co. v. Mary Garvey, Adm'x, 58 Ill., 83; Butler, Adm'r, v. Milwaukee & St. Paul R R. Co., 28 Wis., 487; Brown v. New York Central R. R. Co., 32 N. Y., 597; N. O. & Jack. R. R. Co. v. Bailey, 40 Miss., 461; Newsom v. N. Y. C. R. R. Co., 29 N. Y., 383; Penn. R. R. Co. v. Ogier, 35 Pa. St., 70.

V. The verdict of the jury is sustained by the evidence. Railway Co. v. Moore, 49 Tex., 43; R. R. Co. v. Le Gierse, 51 Tex., 189; March v. Walker, 48 Tex., 375; H. & G. N. R. R. Co. v. Randall, 50 Tex., 262; Pierce on Railroads, p. 396, note 4, 397, 398, 399; Thompson on Negligence, vol. 2, p. 1266, § 58; Penn. R. R. Co. v. Ogier, 35 Pa. St., 70; Baltimore & Ohio R. R. Co. v. State, for use of Kelly, 24 Md., 271; The Southwestern R. R. Co. v. Paulk, Adm'x, 24 Ga., 368, 369; Tilley v. H. R. R. R. Co., 29 N. Y., 253; Kansas & Pacific R. R. Co. v. Lunden, Adm'r, 3 Col., 94; Kansas & Pacific R. R. Co. v. Lydia H. Cuder, Adm'x, 19 Kan., 83; Baltimore & Ohio R. R. Co. v. Wightman's Adm'r, 29 Gratt., 431; Louisville R. R. Co. v. Connor, 9 Heisk., 20; Chicago v. Hesing, 83 Ill., 207; Chicago R. R. Co. v. Becker, 84 Ill., 483; Rose v. Des Moines R. Co., 39 Iowa, 255; Minnie Baches v. Ill. Cent. R. R. Co., 55 Ill., 379; Groten Kemper v. Harris, Adm'r, 25 Ohio St., 514; Penn. R. R. Co. v. Adams, 55 Pa. St., 499. For Lord Campbell's Act, and the laws of the different states of the United States copied therefrom, see Shearman & Redf. on Neg., §§ 292, 293, and note 3, §§ 613, 597; 2 Redf. on

Law of Railways, § 195, subd. 5, also subd. 4, note 3; Oldfield *v.*
New York & Har. R. R., 14 N. Y., 310; 23 Wis., 186; H. & G. N.
R. R. Co. *v.* Randall, 50 Tex., 262, 263.    On the latitude allowed
juries in assessing damages, see H. & G. N. R. R. Co. *v.* Randall, 50
Tex., 262, 263; Danville R. R. Co. *v.* Stewart, 2 Met., 122; Kennedy
*v.* North Mo. R. R. Co., 36 Mo., 351; Wheaton *v.* N. B. & M. R. R.
Co., 36 Cal., 590; Kimball *v.* Bath, 38 Me., 222; Jacobs *v.* Bangor,
16 Me., 192; Gale *v.* N. Y. R. R. Co., 53 How., 387; 17 Minn., 308;
Chicago *v.* Smith, 48 Ill., 107.

VI. The court erred in sustaining the general demurrer of defend-
ant as to the second count in plaintiffs' petition, because the allega-
tions in said count, if true, would entitle plaintiffs to recover
exemplary damages of defendant, under the provisions of the stat-
ute and state constitution by virtue of which this suit was brought.
R. S., art. 2901; Const. of Texas, art. 16, sec. 26; R. R. Co. *v.* Le
Gierse, 51 Tex., 189; R. R. Co. *v.* Moore, 49 Tex., 33; March *v.*
Walker, 48 Tex., 373; Shearman & Redf. on Neg., § 601; Milwau-
kee R. R. Co. *v.* Arms *et al.,* 1 Otto, 495.    When the acts of the
agent are regarded as the acts of the company, see Pierce on Rail-
roads, 367, 368.

BONNER, ASSOCIATE JUSTICE.— The only questions which are deemed
necessary to be noticed in this case arise upon the first, sixth, eighth
and eleventh errors assigned by the plaintiff in error, the Houston
& Texas Central Railway Company, and upon the cross-assignment
made by the defendants in error, Cowser and wife.

1. The first assigned error is that "The court erred in overruling
the defendant's demurrer to the plaintiffs' petition, because it ap-
pears from the face of the petition that the suit is for damages to
the plaintiffs for the death of their son, who is shown to be an
adult, and the parents have no legal claim for his services, and no
actual damages were sustained."

It is said in R. Co. *v.* Nixon, 52 Tex., 25, that "the common law
principle upon which a parent can recover damages for an injury to
his child is based upon the relation of master and servant, and as
this ceases when the child arrives at the age of majority, damages,
under the common law, should be limited to this period.    It is, how-
ever, a grave question, under our statute, whether, with proper alle-
gations, this damage, which is allowed as 'proportioned to the
injury resulting from such death,' should be thus limited."

The right to damages for the death of another, beyond that
allowed by the common law, first given by Lord Campbell's act, is

in Texas provided for both in the constitution and the statutes. The statute not only gives the right to damages, but provides the measure by which it shall be ascertained,— that it shall be "proportioned to the injury resulting from such death."

This expression has been construed to mean in proportion to the respective losses sustained by those entitled to sue, and not to the pain and suffering caused to the deceased by the injury. Cotton Press Co. v. Bradley, 52 Tex., 601; March v. Walker, 48 Tex., 375.

We are of opinion that the damages need not necessarily, in every case, be confined to the time of the minority of the deceased, but, according to the testimony, might or might not extend beyond that period; and that the bare fact that the petition showed that the deceased was over twenty-one years of age would not make it subject to demurrer.

2. The sixth assigned error is that "The court erred in its general charge on the subject of contributory negligence, because it imposed the burden of proof on the defendant, and is a comment on the evidence, and the charge is not law applicable to the case, and the court erred in refusing the defendant's seventh and eighth special instructions, intended to correct said errors."

Beside other instructions given the jury on the subject of contributory negligence, the court charged them that "The party alleging negligence has the burden of proof. Negligence charged by plaintiffs as against the defendants must be supported by evidence to entitle them to recover, and you must believe, under all the circumstances of the case, such negligence was gross negligence — a high degree of negligence — to entitle them to a recovery, and when defendants have charged contributory negligence on the part of deceased as the proximate cause of his death, the burden of proof is on defendants to establish the same."

The refused charges, seventh and eighth, asked by defendant, are as follows:

"7. If the jury believe from the evidence that both the deceased and the agents of the defendant company were guilty of negligence contributing to the injury of which the plaintiffs' son died, you are instructed to find for defendant.

"8. If the jury believe from the evidence that both the deceased and the agents of said company were guilty of gross negligence, contributing to the injury of which the son of plaintiffs died, in that event you will find for defendants."

As a general rule in civil cases, the burden of proof of any particular issue, unless expressly assumed by the other party, devolves

upon him who asserts and relies upon it. Practically this question often becomes rather one of the weight or preponderance of evidence, than technically one of burden of proof.

There is a conflict of authority upon the question. By one line of decisions, the burden of proof devolves upon the plaintiff, as an essential prerequisite to the right of recovery, to show affirmatively that the deceased was in the exercise of reasonable care, and that his negligence did not contribute to the injury; by another, that it is matter of defense to be proven by the defendant. Pierce on Railroads, 298–300; 2 Thomp. on Neg., 1775.

The rule laid down in this state, in R. Co. v. Murphy, 46 Tex., 356, is that in a suit for damages against a railway company on account of the alleged negligence of its agents, it is not necessary that the petition should negative, either by facts stated or by direct averment, the existence of contributory negligence on the part of plaintiff; an exception to this rule exists when the petition, from its averments, would establish, if unexplained, a *prima facie* case of negligence of the party injured.

Although there was a general allegation in the petition that the death of the deceased was "without any fault or negligence on his part," yet, taken as a whole, the material affirmative allegations were that he was killed by the negligence and carelessness of the servants of the defendant company, while he was in the discharge of his regular duties in unloading lumber on a flat-car of defendant, which had been switched off to the position it then occupied, for the purpose of being unloaded.

The defendant answered by general demurrer, general denial, and plea of contributory negligence.

The pleadings of the plaintiffs did not affirmatively make out a *prima facie* case of negligence on the part of the deceased, as by showing that he was, at the time, either passively or actively engaged in such unauthorized or careless act as would, if unexplained, be *per se* an act of negligence; and if they proved by satisfactory evidence that the deceased was lawfully upon the railroad track for the purpose of unloading a car of lumber, and that his death was occasioned by the negligence of the servants of the company in switching their cars, this made such *prima facie* case for the plaintiffs as would require the defendant to rebut it by other satisfactory evidence to the contrary, or by evidence of such contributory negligence on the part of the deceased as would defeat the right of recovery.

Under the real contested issues and the evidence in the case, we

do not think there was such error in the above charge as given which would demand a reversal of the judgment on this ground.

The questions sought to be raised in the seventh and eighth special charges asked and refused seem to have been sufficiently presented in other parts of the general charge given.

3. The eighth assigned error is that " The court erred in sustaining the plaintiffs' objection to the defendant's questions propounded to the witnesses John Henry and J. L. Pannell, for the purpose of obtaining their opinions as experts as to whether the switching at the time young Cowser was killed was done in such manner and with such caution as is employed by railroad employees in similar service, as shown by bill of exceptions."

Upon the issue of negligence, it was competent for the defendant to introduce evidence of the usual mode adopted generally by prudent railroad men in switching their cars under similar circumstances as those which resulted in the death of the deceased.

The two witnesses, Henry and Pannell, were present at the time, and, as shown by other parts of the record, testified both as to the usual and customary mode of such switching, and also the manner in which this particular act was performed. This, in connection with the testimony that they were experts in such matters, virtually resulted in the evidence sought to be elicited by the questions asked and refused, as shown by the bill of exceptions.

4. The eleventh assigned error is that " The verdict of the jury is contrary to the evidence and wholly unsupported in respect to the pecuniary loss sustained by the plaintiffs in the death of their son, and said verdict is excessive and extortionate in the amount of damages assessed."

Under the ruling of the court in this case the plaintiffs were confined to the *actual* damages sustained.

The measure of actual damages in such cases, as said in March *v.* Walker, 48 Tex., 375, is the pecuniary injury sustained, and is not the same as when the party who is himself injured sues and recovers compensation for physical and mental suffering. It has been almost universally held that the principle under which such damages are to be assessed, under similar statutes, is that of pecuniary injury and not as a *solatium.* 2 Thomp. on Neg., 1289, § 30; Pierce on Railroads, 393.

The difficulty in fixing a definite rule to measure this actual pecuniary compensation has often been felt and expressed.

The question whether the jury, in estimating the pecuniary loss of parents for the death of a child of tender years, could determine for themselves, in their own uncontrolled discretion, unaided by ex-

trinsic testimony, the amount of compensation, was raised but not decided in R. Co. *v.* Nixon, 52 Tex., 24.

If this should be allowed in any case, it would be on the principle of necessity only, and should be restricted to that class in which, from the nature of the case, satisfactory evidence was not attainable; and not permitted in one like the present, in which the plaintiffs could have shown such facts and circumstances as would have enabled the court and jury to have reached a conclusion approximating reasonable certainty.

Perhaps the nearest measure of damages, approximating this reasonable certainty, would be such sum as would purchase an annuity, if such security was in the market, equal to the value of the pecuniary aid which the plaintiff would have derived from the deceased, calculated upon the basis of all the facts and circumstances of the particular case reasonably accessible in evidence, and including the probable duration of life, as shown by approved tables.

Although from the necessary uncertainty in the testimony in such cases the jury must be allowed more than ordinary discretion, yet this discretion, as far as possible, should be aided by evidence. Otherwise the verdict is not returned, as required by their oaths, upon the testimony, but upon their individual and perhaps variant and erroneous views, and in regard to which the parties may not have been heard in evidence or argument.

The damages being for the pecuniary loss only, the party claiming them should then, as a general rule, at least be required to prove such facts and circumstances as will enable the jury to return a verdict, based upon this evidence, which would approximate reasonable certainty; and the court to pass advisedly, in reviewing this evidence, upon motion for a new trial.

This testimony would include the circumstances of the deceased; his occupation, age, health, habits of industry, sobriety and economy, his skill and capacity for business, the amount of his property, his annual earnings, and the probable duration of life. Pierce on Railroads, 396; 2 Thomp. on Neg., 1290, both citing numerous authorities in notes.

In the case now before the court, though there was testimony showing that the deceased had at one time contributed some property to the plaintiffs, and had at some time previously to his death thus contributed two-thirds of his wages, yet the plaintiffs did not show his pecuniary circumstances, and what his wages had been or then were, though it was evident that this testimony was easily accessible.

Without such evidence the verdict of the jury could have been but

little more than a merely speculative one, and the court had no standard by which to determine its correctness.

As presented by the record, considering the other facts and circumstances of the case, there was nothing which would relieve the verdict of the character, which the first blush would stamp upon it, that it was greatly excessive and not warranted by the testimony. It should have been set aside by the court and a new trial granted, and the failure to do this was error, for which the judgment is reversed.

5. The cross assignment of error, filed by the plaintiffs, is that "The court erred in sustaining the general demurrer of defendant as to the second count in plaintiffs' petition, because the allegations in said count, if true, would entitle plaintiffs to recover exemplary damages of defendant, under the provisions of the statute and state constitution by virtue of which this suit was brought."

Section 26, article 16, Const. 1876, before cited, reads as follows: "Every person, corporation or company that may commit a homicide through willful act or omission, or gross neglect, shall be responsible in exemplary damages to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide."

It will be thus seen that, under the constitution, exemplary damages are allowed only to a certain class or designation of persons — the surviving husband, widow or heirs of the body, and not to the parents, in which right the present suit is brought.

If the plaintiffs then can recover exemplary damages at all, it must be by virtue of the statute.

The provisions of the Revised Statutes, bearing upon this subject, are as follows:

"Article 2899. An action for actual damages on account of injuries causing the death of any person may be brought in the following cases: 1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer or hirer of any railroad, . . . or by the unfitness, gross negligence or carelessness of their servants or agents. 2. When the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another.

"Art. 2900. The wrongful act, negligence, carelessness, unskillfulness or default mentioned in the preceding article must be of such a character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury.

" Art. 2901. When death is caused by the willful act or omission, or gross negligence of the defendant, exemplary as well as actual damages may be recovered.

" Art. 2903. The action shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose death shall have been so caused, and the amount recovered therein shall not be liable for the debts of the deceased."

The statute clearly draws the distinction between an act done by the proprietor, owner, charterer or hirer of a railroad, and one by their servants or agents, and also between actual and exemplary damages. In our opinion, under its proper construction, although actual damages may be given for death caused by the unfitness, gross negligence or carelessness of such servant or agent, as well as for the negligence or carelessness of the proprietor, owner, charterer or hirer himself, yet that exemplary damages are allowed only for the willful act, omission or gross negligence of the "defendant" to the suit, if a corporation, for the willful act, omission or gross negligence of one representing it in its corporate capacity, as a corporate officer, but not of a mere ordinary servant or agent.

Exemplary damages being penal in their character, for a *quasi*-criminal act, involves on the part of him who commits the act the question of an express willful intent, or that degree of gross negligence which implies it. This criminal intent should not by implication be imputed to the principal when the act has neither been authorized nor ratified by him, so as to make it in law virtually his own act.

The above distinction between the liability of the principal for actual and for exemplary damages for the act or omission of the servant or agent, is founded upon natural justice, was recognized in Hays v. R. Co., 46 Tex., 272, and numerous other cases.

In our opinion, there was no error in the judgment of the court below sustaining the demurrer of the defendant to the second count in plaintiffs' petition, for exemplary damages; but for the error previously shown, the judgment is reversed and cause remanded.

REVERSED AND REMANDED.

[Opinion delivered July 23, 1881.]