## KANSAS CITY SOUTHERN RY. CO. v. WILLIFORD.

### No. 6756.

Circuit Court of Appeals, Fifth Circuit.

May 22, 1933.

Rehearing Denied June 23, 1933.

W. Scott Wilkinson, of Shreveport, La., for appellant.

George G. Dimick and William B. Hamilton, both of Shreveport, La., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

We reverse this case for error in refusing to instruct a verdict for the defendant, because the evidence did not warrant a finding of negligence unless because the place of work was not safe, and as to that demands a finding that the risk was assumed by the deceased. The suit is under the Federal Employers' Liability Act, §§ 1, 4 (45 USCA §§ 51, 54), for the killing of Ivan Williford while at work in interstate commerce as a member of a welding crew on the tracks of the Kansas City Southern Railway Company. Under that act liability arises only out of the railroad company's negligence, and the common law stands as to assumption of risk by the employee except where the risk is caused by the violation of federal safety acts. Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. No violation of safety acts is claimed. The negligence relied on is that Williford was inexperienced and insufficiently warned of the dangers of his employment, that the train which killed him was negligently operated, and that his place of work was negligently unsafe, in that the stationary power plant which he was put to run was near the track and obstructed the view of it, and so noisy that an approaching train could not be heard. There is no substantial conflict in the evidence. Williford was twenty-one years old, had had a high school education and one year at college, and had been in the welding crew for four months, working the first two as a welder and the last two as engineer of the power plant. The latter was a powerful gasoline motor connected with an electric generator which furnished electricity through cables lying on the ground along each side of the track beyond the ends of the cross-ties to the welders and grinders who worked on the joints of the rails. The power plant weighed some 7,000 pounds, could be run along the track to a desired point and then shifted transversely on skids to one side until the work within reach was finished, when it would be moved further. It was 15 feet long, 6 or 7 feet high, and about that wide. Although new, it was very noisy in operation, so that even the whistle of a train could not be heard by one standing near it. The noise had been increased somewhat by sawing off part of the exhaust pipe, an operation in which Williford had himself assisted. On the morning in question the power plant stood on the west side of and about 6 feet from the track on the inside of a curve. The crew in coming to work had waited for a local freight train expected from the south, but on its not coming they had sent forward a flagman in advance of their motorcar and had thus reached the place of work. The foreman directed the grinding machine to be kept off the track until the train should pass, but had Williford to start up the power plant and took the welders northward several hundred yards to work. Williford lighted a blowtorch as if to inspect the soldering of cable joints, which was part of his duty, but set it down on the south end of the motor, and walked behind the motor on its west side and when about 10 feet to the north of it turned and without looking down the track set his foot on the rail and stooped over as if to tie his shoe, when the train coming from the south struck and killed him. There was no cable at or between the rails where Williford was, and he had no tool in his hands. The inspection of the cables along the outside of the rails did not require his going on the track unless to pass from one side to the other, in doing which his attention would not be absorbed by his work. The train was running at its usual speed, gave the usual whistle signals on entering the curve, and its brakes were in good working order. The engineer was on the outside of the curve and could not see the power plant nor Williford. The fireman on the other side was on the lookout, and saw Williford come out from behind the power plant and put his foot on the rail. The engineer was at once notified, put his brakes on in emergency, but was unable to stop in time. All the witnesses say that the track crews, including this one, are expected in railroad practice to keep out of the way of trains, which maintain their usual speed and schedules. When the power plant is on the rails flagmen are put out in each direction to guard the trains. When the welders and grinders are at work on the track with their attention fixed, they also are guarded by flagmen who watch and assist them from the track when a train approaches. Williford also, when near the plant, was under duty to shut off the current upon the approach of a train. He had no flagman, but was supposed to keep off the track and himself to help watch for trains. Among the working rules with which he was shown to be familiar were these: Rule 101. "On the ap-

proach of the train employees working on or about the track must move to a place of safety. They must not work or stand on the tracks except when necessary for the proper performance of their duties." Rule 105. "Look in both directions before stepping upon or crossing the tracks." Rule 107. "Clear passing trains at least 8 feet, face towards track." Although the power plant obstructed the view southward while Williford was at its north end, had he looked southward before stepping on the track he could have seen a distance of 530 feet down the track to the mouth of a cut.

On these facts we see no ground to find negligence in the operation of the train. There was no failure to warn and instruct Williford as to the danger from trains if such warning be due to any intelligent person twenty-one years old. There was no need to put a flagman to watch for his safety, since he had no duties on the track. He in fact well knew that a train was momentarily expected from the direction whence it came. His own want of care for his safety rather than any negligence of his employer plainly caused his death. The only plausible claim of negligence in the employer is that the power plant was noisy and was placed on the inside rather than the outside of the curve. It was not shown that the noise could practicably have been reduced. It was testified that all the operating levers of the power plant were on its west side, and that to have placed it on the east side of the track would have exposed the operator to passing trains, and that centrifugal force in rounding the curve would tend to throw objects from the trains to the outside of the curve and the projections of engines and cars would also reach out further on that side. But if negligence contributing to the death could be found in these respects, it was perfectly open and obvious to Williford. He made no objection to the noise, which he had known for four months and had helped to increase, or to the location of the plant if it was badly located. Wherever placed, it would prevent sight of a train if he went behind it. Any avoidable unsafeness in his place of work was perfectly known and the risk of it assumed. "When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk even though it arise out of the master's breach of duty." Seaboard Air Line Ry. v. Horton, 233 U. S. at page 504, 34 S. Ct. 635, 640, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. "The visible conditions may have been of recent origin, and the danger arising from them may have been obscure. In such cases, and perhaps others that could be stated, the question of the assumption of the risk is plainly for the jury. But where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employee is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction, * * * the question becomes one of law for the decision of the court." Butler v. Frazee, 211 U. S. at page 466, 29 S. Ct. 136, 138, 53 L. Ed. 281. Very many authorities to the same effect are collected in St. Louis Cordage Co. v. Miller (C. C. A.) 126 F. 495, 511, 63 L. R. A. 551. Williford's full age, good intelligence, four months' experience about this power plant, and special warnings of train risks, leave no room to doubt that he knew he must use his eyes and not rely on his ears, and that to come from behind the power plant, wherever placed, and step on the track without looking for trains, was always dangerous; and that these risks were consciously assumed by him. On the occasion of his death, without necessity in his work and with knowledge that a train was momentarily expected, he went from behind the power plant on the track without looking and with no sufficient opportunity to the train crew to see his danger. The negligence was his and not the master's. The case of Rocco v. Lehigh Valley R. Co., 288 U. S. 275, 53 S. Ct. 343, 77 L. Ed. ——, is not in point. The deceased there had to ride over the track to inspect it, and the duty to do so was urgent because of storm conditions, all of which was known to the crew of the approaching train. He and they were held contributorily negligent.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.