**HALLECK et al. v. HARTFORD ACCIDENT & INDEMNITY CO.**

No. 7388.

Circuit Court of Appeals, Fifth Circuit.

Feb. 26, 1935.

Rehearing Denied March 27, 1935.

S. Austin Wier and Gabe P. Allen, both of Dallas, Tex., for appellants.

Joseph J. Eckford and Paul T. McMahon, both of Dallas, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Appellants received an award from the Industrial Accident Board of Texas under the provisions of the Workmen's Compensation Law (Vernon's Ann. Civ. St. Tex. art. 8306 et seq.) for the death of H. H. Halleck, the husband of Louise Halleck and father of the other appellants, while an employee of the Sun Pipe Line Company. Appellee (the insurance carrier) filed suit to set aside the award. Appellants filed a cross-action praying for a lump-sum judgment of $7,194.28. The suit was tried to a jury on a stipulation as to some of the facts and the evidence of eight witnesses. Under the provisions of the statute the burden was on appellants to prove their right to compensation. When they rested appellee moved for a directed verdict, which was granted. Error is assigned to that action of the court and to the exclusion of a statement made by the deceased to the witness McBee. Halleck was employed by the Pipe Line Company for the purpose of securing rights of way and settling claims for damages in connection therewith at a salary of $450 per month. On May 14, 1931, he left Tyler, Tex., about 8 o'clock a. m., accompanied by McBee, also employed in the same work. McBee testified they visited several places along the line and were together all day, except that Halleck sometimes went to one end of a property and McBee to the other. It was necessary occasionally to cross a creek and they would do so in the best way they could. They returned together in a car to Nacogdoches about 4 or 5 o'clock that afternoon, and went to their hotel room. McBee noticed for the first time that something was wrong with Halleck when in undressing he showed McBee a bruise on his left leg, a little above the ankle. The skin was not broken but looked rough and bluish as if bruised. They had visited several places in two counties during the day. They had ridden together about 25 miles on the way back to the hotel, and Halleck had said nothing about having had an accident. McBee was asked what Halleck said after reaching the hotel about how he received the bruise, and objection to this was sustained; but the witness was permitted to state, for the purpose of an exception, that Halleck said he had hurt his leg in a fall from a log, which broke under his weight as he attempted to cross a creek while following the pipe line right of way during the day. McBee further testified that he saw Halleck after that and he had more trouble with his leg. When they would go out together, the next day or so, his leg became worse and he carried a bottle of liniment, which he applied to it from time to time during the day. He did that for a few days and the leg became a sort of dark colored bruise. He wore a rubber bandage for a few days, and his leg was swelling. In walking he would favor it and later on he began to limp on it. Prior to that he did not have a limp nor did he ever seem to favor either leg. Dr. J. H. Pope testified that he treated Halleck in May, 1931. When he first saw his leg he had a bruised and skinned place and in addition a streptococcus infection. He saw him again several weeks later. Dr. Pope was then given the subsequent history of Halleck's case, and testified it was his opinion that Halleck was suffering from what was known as malignant condition, probably sarcoma, and from the history and clinical and laboratory findings in his opinion it was the result of the injury for which he treated him. It further appeared that on June 20, 1931, Dr. Pope made a preliminary surgeon's report addressed to the appellee which contained the following: "Bruised inner side right leg walking across creek, became infected, streptococcus infection." Dr. Pope made an affidavit on May 12, 1933, in which he stated he treated Mr. H. H. Halleck from May 19, 1931, to June 4, 1931, for injuries to his right leg, "which he received when he fell from a log while crossing a creek." These statements were brought out in cross-examination and went before the jury without objection. There was no sarcoma apparent at the infected place on the leg. Dr. Milliken testified he became Halleck's family physician in 1918 but Halleck was only an occasional patient for trivial things; that Halleck was an unusually healthy, robust man. He came to Dr. Milliken's office in April, 1932, and an examination was made at that time. Halleck gave the doctor a history of having had an injury to his left leg a year

before, but there was no external evidence of it then. Halleck had some swelling around the thigh which he surmised was from an infection. He had him go to a dentist and have his teeth checked up. There was some trouble with the teeth which was attended to, but Halleck made no headway and progressively grew worse. There was swelling in his left leg, both in the thigh and in the leg below the knee. The return of circulation was being interfered with. To determine whether the infection was a blood-stream infection he had a blood culture made, which proved negative. He then did a blood Wasserman, which showed four plus positive, which could mean pronounced syphilis. Eight days later there was a spinal Wasserman, which proved negative. There were no clinical symptoms of syphilis. Halleck was given a most intensive syphilitic treatment but the swelling continued to grow worse. The treatment would have cured a syphilitic condition. Dr. Milliken thought there was a gumma in his pelvis over his pelvic bone in the left side. If it was a gumma the treatment should have caused it to disappear. Subsequently an X-ray was made. The growth in the bone was indicated by the picture, showing a thinning, and a destruction. The growth produced an interference with his bladder. The doctor discarded syphilis as his trouble, notwithstanding the Wasserman, and concluded that he could be suffering from nothing but a malignancy; in other words, from cancer. He called in Dr. McBride in consultation. He proposed a biopsy or cutting down on the tumor to get the nature of the specimen by submitting it to microscopic examination, but this was not done. He was then taken to Baylor Hospital and given unsuccessful X-ray treatment for malignancy. The final result of the malignancy was that on October 8, 1932, he died of metastasis, or, in other words, from the growth that had started in his pelvis and deposited itself in both his lungs. In the doctor's opinion the sarcoma came from an injury. He had a history of the injury to his leg and in his opinion Halleck's death was the result of the injury he received to his left leg. The history was all dated from the injury; that a trauma could produce a malignant tumor; that the cause of malignancies generally is not known but they do follow trauma in many instances, but usually at the point of injury. The physicians were examined as to a book entitled "Neoplastic Diseases" by Dr. Ewing whom all admitted to be an authority on cancer. In the book the statement was made that trauma seems to be the sole tangible origin of many tumors of bone, nerve, tissue, testicle, and many other organs; that the character of the injury followed by tumor growth varies. Traumatic cancer rarely appears, while sarcoma commonly develops after a single blow. Another statement in the book is that a reasonable time relation is from three weeks to three years or more in certain cases. Dr. Milliken stated on cross-examination as to the book by Dr. Ewing that a traumatic cancer usually develops at the site of the injury. Dr. McBride, who was called in consultation, confirmed the opinion of Dr. Milliken that Halleck died from a malignancy, otherwise sarcoma, but he did not have any idea of the cause; sarcomas can develop without any violent injury. Other testimony was to the effect that Halleck had trouble with his leg from May, 1931, on; that he wore a rubber bandage on it; that he continued to work, but became more and more disabled and finally had to quit, although his salary was paid till death. It does not appear that he ever asserted any claim that his injury was compensable.

■ A vital point in the case is the rejection of Halleck's statement to McBee on May 14, 1931, that he hurt his leg while at work that day, for it is the only direct evidence to show an injury in the course of employment. The petition alleges that the injury was received at 10 o'clock that morning. The statement was made after 5 o'clock in the afternoon; there being nothing exclamatory about it, and there having been no condition of pain or excitement to prevent deliberation. It was made cooly, as a narrative of a past event, at least, twenty-five miles from and several hours after the alleged occurrence and to a man who had been with him the whole time. Though Halleck is now dead and unavailable as a witness, his statement was properly rejected as hearsay. Declarations or entries of a person since deceased made against his interest and not with a view to litigation are evidence, this exception resting on the probable truth of a statement which is against financial interest when made. Here Halleck spoke nothing against his interest, for it was to his interest to attribute his infirmity to his job. This fact is not altered by his later finding that he was able to draw his usual salary instead of claiming a lesser compensation. In the early case of Queen v. Hepburn, 7 Cranch, 290, 296, 3 L. Ed. 348, the rule against receiving unsworn hearsay not subject to cross-examination

was strongly asserted, and the exceptions to it were noted; Chief Justice Marshall saying: "It will be necessary only to examine the principles on which these exceptions are founded to satisfy the judgment that the same principles will not justify the admission of hearsay evidence to prove a specific fact, because the eyewitnesses to that fact are dead. * * * If the circumstance that the eyewitnesses of any fact be dead should justify the introduction of testimony to establish that fact from hearsay, no man could feel safe in any property, a claim to which might be supported by proof so easily obtained." In Donnelly v. United States, 228 U. S. 243, 33 S. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710, it was sought to prove that a man since deceased had confessed that he did the crime for which Donnelly was on trial. The court, at page 273 of 228 U. S., 33 S. Ct. 449, 459, states the matter thus: "Hearsay evidence, with a few well-recognized exceptions, is excluded by courts that adhere to the principles of the common law. The chief grounds of its exclusion are, that the reported declaration (if in fact made) is made without the sanction of an oath with no responsibility on the part of the declarant for error or falsification, without opportunity for the court, jury, or parties to observe the demeanor and temperament of the witness, and to search his motives and test his accuracy and veracity by cross-examination, these being most important safeguards of the truth where a witness testifies in person, and as of his own knowledge; and, moreover, he who swears in court to the extrajudicial declaration does so (especially where the alleged declarant is dead) free from the embarrassment of present contradiction, and with little or no danger of successful prosecution for perjury." Then recognizing the exception that a declaration of a deceased person contrary to his interest may be admitted, the interest was held confined to a financial interest, and the confession was held inadmissible. The dissent went only on the ground that the confessor spoke against an interest deeper than a financial one. The statement of Halleck was not contrary to any interest of his..

■ But it is claimed that the statement was made in such close connection with the occurrence to which it referred as to be not mere narrative but a part of the occurrence, of the res gestæ. Things said during an occurrence and as a part of it, no matter what the speaker's interest be or whether or not he has since died, are provable as facts, "verbal acts"; and spontaneous utterances about the occurrence shortly afterwards if made under such pain or excitement or other circumstances as fairly exclude afterthought or design are received, because such circumstances prolong the influence of the occurrence itself. The point is not so much the lapse of time or change of place as the continuance of a situation which insures that what is said is a spontaneous reaction to the occurrence rather than an independent action of the speaker's will. "What the law altogether distrusts is not after-speech, but after-thought. * * * The rule contemplates that all the res gestæ, including declarations forming part thereof, must transpire within the present time of the transaction. * * * That they shall be or appear to be spontaneous is indispensable, and it is for this reason alone that they are required to be speedy. There must be no fair opportunity for the will of the speaker to mould or modify them. * * * His declarations must be the utterance of human nature, of the genus homo, rather than of the individual. Only an oath can guaranty individual veracity; but spontaneous impulse may be a sufficient sanction for the speech of man, as such,—man as distinguished from this or that particular man." Travelers' Ins. Co. v. Sheppard, 85 Ga. 751, at page 775, 12 S. E. 18, 26. The facts in National Masonic Acc. Association v. Shryock (C. C. A.) 73 F. 774, were much like the present case, and on an elaborate review of the decisions, including Travelers' Insurance Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437, the statements of the injured person as to how he got hurt made several hours afterwards and at another place were excluded. The rulings of the Supreme Court in Texas where the trial was held are to the like effect. In City of Galveston v. Barbour, 62 Tex. 172, 50 Am. Rep. 519, a boy severely hurt his foot, and what he said about it to his mother just afterwards when he came to her crying and in suffering was admitted, but what he said to his father next morning was rejected. In International & G. N. R. R. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 1040, 27 Am. St. Rep. 902, it was said that res gestæ covers not only sayings at the very time of the transaction but also "such as are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or

design. * * * The declarations under consideration were made at the place of the accident, and within a very few minutes after it occurred, and while the plaintiff was still writhing under the pain inflicted by it. We conclude that the testimony was properly admitted." Halleck's statement to McBee was not made under such circumstances as to constitute it a part of the res gestæ.

Aside from the excluded evidence there was no proof that Halleck received any injury in the course of his employment. The proven circumstances show a possibility of his having been so injured, but they are consistent with his having hurt his leg otherwise. Nothing happened or was said during the time of employment to indicate any accident or injury then. The words in Dr. Pope's statement that Halleck "fell from a log while crossing a creek," if they prove anything, do not locate the time or place or occasion, but Dr. Pope evidently knew nothing about it at first hand and was speaking from rumor or hearsay, and such evidence proves nothing. Gaines v. Relf, 12 How. 472, 473, 13 L. Ed. 1071. Moreover, while it is reasonably shown that the cancer in Halleck's lungs of which he died came by metastasis from one in his groin, the evidence is hardly sufficient to show that a blow on his ankle where no sarcoma resulted caused that in the groin a year later. Two of Halleck's doctors gave an opinion that the death resulted from the blow, but the other said he could form no such opinion. Opinions of doctors apparently not in accord with the proven facts have suffered recently as a basis for verdicts. United States v. Spaulding (U. S.) 55 S. Ct. 273, 79 L. Ed. ——; Hamilton v. United States (C. C. A.) 73 F.(2d) 357.

Judgment affirmed.