## BONNER v. TEXAS CO. et al.
### No. 8251.

Circuit Court of Appeals, Fifth Circuit.
April 5, 1937.

292

M. G. Adams, of Beaumont, Tex., for appellant.

Wm. K. Hall, J. Russell Mount, and John C. Jackson, all of Houston, Tex., for appellees.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The plaintiff-appellant sued the Texas Company and its subsidiary, Texaco Can Company, both corporations of Delaware, for the negligent homicide of her husband, an employee of the latter. The District Court rejected as evidence a statement of the husband as to how he was injured, and directed the verdict for the defendants. These rulings are for review.

The deceased, Bonner, died because of burns from an explosion while he was at work in a room where machines in his charge were making a fuel mixture of air and natural gas and of air and vapor of gasoline. Compensation was paid under the Workmen's Compensation Law, but the Texas Constitution, art. 16, § 26, gives an action for exemplary damages against "every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect"; and the Workmen's Compensation Law, Rev.Civ. Stats. art. 8306, § 5, preserves this action notwithstanding compensation may be paid. The employer Texaco Can Company was therefore sued for exemplary damages for the homicide, the gross negligence alleged consisting in operating the mixing machines after they were old and defective and leaking gas, and while overloaded, and in having in the room electric motors which were uncovered and sometimes emitted sparks, and in having test flames burning behind a glass screen, but not air or gas tight, from which explosions might happen and had happened to the employer's knowledge, and that no sufficient ventilation was provided to carry off escaping gas. In accordance with Texas practice, the Texas Company, which delivered the natural gas to a machine from its plant two miles distant through its own pipe line, was joined and alleged to be responsible for the negligence of Texaco Can Company, its subsidiary, and independently negligent in that it suddenly and unnecessarily and without warning blew gas or oil or both through its pipe to the machine at very high pressure, thereby breaking and cracking the machine and causing gas to escape from it. Res ipsa loquitur was pleaded as excusing the want of a more exact statement of the cause and manner of the explosion. Besides denial of negligence, the Texaco Can Company pleaded contributory negligence of Bonner and assumption of risk, and the Texas Company pleaded contributory negligence. On issues thus defined the evidence for the plaintiff showed such a condition of the plant and its operation as was alleged, including the occasional "blowing out" of the two-mile gas main by forcing high-pressure gas through it to free it from accumulations of oil; all of which had been going on for years and was well known to Bonner, who was in charge of the mixing room as foreman. What happened at the time of the explosion could not be precisely shown, as only he and his immediate superior were present and both died in consequence of it. Nothing was found in the condition of the room and the machines to show the cause

or manner of the explosion. The machines and pipes remained, so far as appeared, unbroken.

To rebut the inference of assumption of risk, and to show that a high pressure was suddenly put by the Texas Company on its gas main, the statement of Bonner to his wife and a lady friend was offered. It was a consecutive narrative, covering in the record more than a printed page, of trouble that the machines had been giving all day, of how Bonner had sought to fix them and had been unable, and had sent for his superior to come, and had asked him to shut the plant down, but the request was refused and he was told to stay there and do the best he could, and that at the moment before the explosion he was telling his superior that they were then shooting oil through the line from the Texas Company's refinery. The preliminary proof to show that this statement was not mere hearsay but res gestæ was that the explosion occurred about 4:10 p. m., that Bonner was taken to the first-aid room at the plant and given attention, and was then taken by automobile six or seven miles to a hospital and his wounds dressed in the emergency room; and that he was then put to bed in a ward. His wife, the plaintiff, had come about three miles to the hospital, and in the emergency room she broke down and her husband took her hand and told her not to cry; that he was going to be all right. Afterwards in the ward she asked him how it all happened, the other lady being present, and his statement followed. This was about forty-five minutes after the explosion. The wife then left to see about getting a private room, and in her absence he said to the other lady not to repeat it to his wife, but "I am badly burned. I am afraid they have gotten me this time," and in reply to a remark from her, "It took a long time, but they got me." He was conscious and rational, though apparently suffering notwithstanding hypodermic injections. It does not appear that he was ever unconscious, nor what his previous conversations with others were, if any.

■ To justify admission of Bonner's statement, the doctrine of dying declarations is faintly .urged, but that exception to the rule against hearsay is made only in favor of criminal justice and has not been much applied in civil cases. Nor does it appeared that the declarant was in fact in articulo mortis. That this important witness has died does not render his declarations admissible, since they were not against his interest. The general rule that statements by a person not under oath and not subject to cross-examination, although he be since deceased, are not to be received in evidence, we recently examined along with the established exception touching res gestæ in Halleck v. Hartford Accident & Indemnity Co. (C.C.A.) 75 F.(2d) 800, a case from Texas, and what was there said need not be repeated. It does not well appear here that the transaction of the explosion was still on foot, speaking through this man in exclamatory or at least spontaneous words. Though suffering, the declarant was far in time and space from the explosion, and had been with several persons so that a spontaneous impulse to speak could have expended itself. He was calm, and solicitous for his wife, thus taking note of his relationships to life. What he said about the explosion was not spontaneous, but in response to questions put to him. The words, "They have gotten me this time" seem to show an effort to place the blame of the occurrence, though possibly he was referring only to the machines. There is considerable discretion vested in the trial judge in dealing with the admissibility as res gestæ of evidence which may be on the border line. St. Clair v. United States, 154 U.S. 134, 149, 14 S.Ct. 1002, 38 L.Ed. 936; Barry, Inc., v. Baker (C.C.A.) 82 F.(2d) 79; Pilkinton v. Gulf Ry. Co., 70 Tex. 226, 7 S.W. 805, 806, 808. Many cases are cited and reviewed in Chesapeake & Ohio Ry. Co. v. Mears (C.C.A.) 64 F.(2d) 291. We think the court was well justified in treating this as a narrative of past events, and thus not res gestæ but hearsay.

■ With this evidence out there is nothing to prove that the Texas Company caused the occurrence by high-pressure gas. There is only a possibility based on such pressure having been used at times in the past. It is not liable for the neglects of the Texaco Can Company, for Texaco was a separate corporation conducting its separate business through its own officers and agents. This is not a case of a sham corporation put forward to screen its creator and owner. Clearly the Texas Company has not been shown to be either separately or jointly liable.

■ As to the Texaco Can Company the question is more complicated. Willfulness or gross neglect must be shown, and the recovery can be of exemplary damages only, since the actual damages have been settled for in the compensation already paid. Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.(2d) 397, 408. It is argued

in behalf of Texaco that a corporation cannot for the unauthorized and unratified act or neglect of its agents be punished by the infliction of exemplary damages, citing Lake Shore Ry. Co. v. Prentice, 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97. But under the Constitution and statutes of Texas corporations are expressly made liable for such damages in case of homicide through willful act or omission, or gross neglect. It has been said, however, that the willfulness or wantonness which justifies such damages must be that of one representing the defendant in a corporate capacity, and not a mere servant or agent. Houston & T. C. Ry. Co. v. Cowser, 57 Tex. 293, 294, 306. In Fort Worth Elevators Co. v. Russell, supra, the court declares: "The rule deducible, it seems to us, from the Texas authorities, is that exemplary damages are not recoverable against a corporation where the grossly negligent act involves only a breach of duty by a mere servant or employee as such, unless the act was previously authorized or was subsequently approved by the corporation. But where committed by an agent who represents it in such manner and under such circumstances that under the general rules of law his acts are regarded as the acts of the corporation itself, as distinguished from the acts of a mere servant, then an action for punitive damages does lie, regardless of the question as to whether or not the agent was a corporate officer." The master's duty to use care to furnish a safe place to work and safe appliances is nondelegable, and any agent of any rank to whom a corporate master intrusts the performance of that duty fully represents it, and the full quality of his acts and negligences in its performance are to be attributed to the corporation. The liability of a corporation for exemplary damages for a homicide due to gross neglect in failing to furnish safe appliances was upheld in Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W. (2d) 409. No matter who (other than Bonner himself) was charged by Texaco with providing and maintaining a reasonably safe place to work and reasonably safe appliances, his gross neglect would be that of the corporation. But Bonner here was in charge of the operation of the room and of the machines with a duty to adjust and supervise them, but with no authority to make alterations or replacements. Since it does not appear what caused the explosion, one can only guess whether it was due to something that Bonner did or omitted, or to something not within his duty or control.

Nor can it be said on the evidence whether the cause lay in the general conditions for which Texaco Can Company was responsible or in something suddenly done by the Texas Company. When there is no direct evidence, and the proven circumstances are consistent with either of two theories, and there is nothing to show that one rather than the other is correct, neither is proven. If the plaintiff's right must rest on only one of them, recovery cannot be had. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 339, 53 S.Ct. 391, 393, 77 L.Ed. 819; Patton v. Texas & P. Ry. Co., 179 U.S. 658, 21 S. Ct. 275, 45 L.Ed. 361. Res ipsa loquitur does not help, for that doctrine applies only when the instrumentalities causing injury are shown to have been wholly in the care of defendant, and not to have been meddled with by the person injured or outsiders. Davis v. Castile (Tex.Com.App.) 257. S. W. 870, 872; Texas & P. Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S.W. 3; Blanton v. Great Atlantic & Pacific Co. (C.C.A.) 61 F.(2d) 427; Lucid v. E. I. Du Pont Co. (C.C.A.) 199 F. 377, L.R.A.1917E, 182.

But the evidence is clear that, aside from conditions which may have been caused by Bonner or by the Texas Company, those defects in the place of work and the appliances for which Texaco was responsible to him were of long standing and as fully known to him as to anyone else, and that as a man of skill and experience he was well aware of the danger from them of explosions. That he should know the exact percentage of air and gas which would explode was not necessary, the point being that he knew there was danger of explosion. A workman thus knowing the actual peril of his work must leave it or else assume the risk, unless he is continuing for a short time on the promise of his employer to remove the danger. Seaboard Air Line Ry. v. Horton, 233 U.S. 492, 34 S.Ct. 635, 58 L. Ed. 1062, L.R.A.1915C, 1, Ann.Cas.1915B, 475; Kansas City Southern Ry. Co. v. Williford (C.C.A.) 65 F.(2d) 223. This assumption of known risk defeats recovery for a homicide under the Texas Constitution. Fort Worth Elevators Co. v. Russell, supra. Under the facts disclosed the court rightly directed the verdict for the defendant on this ground also. Butler v. Frazee, 211 U.S. 459, 29 S.Ct. 136, 53 L.Ed. 281; Kansas City Southern Ry. Co. v. Williford, supra.

The judgment is affirmed.